BREAUX, C. J.
Plaintiff held a policy of $2,000 in defendant’s company, covering his dwelling house, building and additions, consisting of a shingle-roof frame building, insured at $1,350; also his household and kitchen furniture, listed separately, at $200, and a soda fountain, not in use, stored on the place, for $200, and $150 on a barn, and $100 on the contents of the barn.
Nearly all of the property insured was destroyed by fire on one of the nights of April, 1909.
In January preceding, a local insurance agent called on plaintiff to insure his property, situated in Bogalousa.
This local agent was a member of the firm of M. B. Clark & Co., insurance agents.
He procured plaintiff’s application for insurance, and afterward repaired to his residence to determine the amount for which he would insure the property and to inspect the premises.
While there, he found that there was a barn at a distance from the residence of about 50 feet. There was also a small house, of about 12 by 15, in front of and very near the house of plaintiff.
While he was on his round of inspection in company with plaintiff, this agent saw a negro man at work cleaning clothes in a small room at the far end of the barn. He inquired of the plaintiff in regard to the occupation of this workman. He said as a witness that plaintiff said to him that the workman was pressing a few suits of clothes.
This plaintiff did not admit, but positively denied.
That is, he said that he did not, in his statement to defendant’s agent, say that the negro was pressing a few suits of clothes; that he said he was pressing clothing.
The agent testified that he asked the plaintiff if the negro workman was using gasoline, and that, as the plaintiff did not happen to know, he turned to this negro boy and . asked him if he was using gasoline. The-answer was “No;” that he only used soap, water, and an ammonia preparation, which preparation was in a jug near by.
The agent satisfied himself that it was not gasoline, and that it was as the negro stated.
The agent testified that the plaintiff asked him if it made any difference, as he (the agent) states, his (plaintiff) having a few suits of clothes cleaned and pressed in the barn. The plaintiff swears that there was. nothing said about a “few suits,” and swears, further, that he inquired of the agent if it made any difference, for, if it did, he (plaintiff) could easily make a change.
The agent states that he replied that he-did not see that there was any danger in this pressing business, as it was a few suits: cleaned in the barn; that it was as if plaintiff’s wife washed and ironed clothes in the house, provided, always, gasoline was not. used.
This agent testified that, in walking toward the front of the house, he saw the unoccupied room, and warned plaintiff not to use it except for members of his family or visitors to dwell in, for otherwise it would affect his policy.
This is also denied by plaintiff under oath, who says, not only that this agent did not make any such statement to him, but that he informed the agent that in a few days, the pressing club would carry on its business- *657 in this room, and that the agent offered not the least objection; on the contrary, as he understood, gave it his approval. He further said under oath that the agent had passed there often after the pressing club had been installed in this little room.
While in some respects the plaintiff and the agent agree,'in other respects they differ entirely in their testimony.
Plaintiff testified that the agent’s examination of the premises was thorough ; that this agent was informed that he had rented the barn before mentioned; also the small room, which was to be occupied by the pressing club in a few days.
That, after the agent had made a thorough examination, he assured plaintiff that the risk was entirely safe, and that the policy of insurance would be issued to him; and this policy was issued to plaintiff without any additional instruction of any kind.
The agent is quoted by plaintiff and the workman, Owen, as saying;
“It doesn’t make any more difference than an old washerwoman washing and ironing in your kitchen.”
The witness virtually owns that this was substantially correct, but he expressed approval in more appropriate words.
These witnesses, plaintiff and defendant’s agent, we have said, contradicted themselves.
If we were to accept the statement of plaintiff, there would not be occasion for study in order to decide. If we accept that of defendant’s agent, he would be entirely fight.
We have concluded to accept neither, in those respects that one contradicts the other.
It must be borne in mind that the defendant is seeking to have its own policy, with many conditions written by itself, canceled because of the alleged failure of plaintiff to follow all of its many terms.
[1] The onus of proof is with the defendant, asking to be relieved from the payment of one of its policies.
Under the rules of evidence, this onus is-not sustained.
So far as we know, the two witnesses, plaintiff and defendants’ agent, are about of equal veracity and standing.
We, of course, are only governed by the-record in this respect.
Eliminating, under the well-established rule, the conflicting evidence, there does not remain sufficient evidence to justify us in setting aside the policy and relieving the defendant from the liability assumed toward plaintiff.
There remains evidence of other witnesses who were present. They testified that the agent saw the pressing club; that he passed the room (after the insurance had been effected) in which this pressing club was carrying on its occupation; that no objection was made by him; on the contrary, he gave consent to the work; that this pressing and clothes cleaning club was carried on in the open. Any one who passed could see it.
Even if he did not pass the room, as testified to, it remains as a fact that he had seen the workman and examined his work.
The case was heard in the district court by Judge Sommerville, until recently judge of that court. He saw, heard, and observed the witnesses, weighed their testimony, and arrived at the conclusion that its weight was not with defendant, and rendered judgment for plaintiff.
We have not found that there was error in this conclusion.
[2] This being our' decision as to the facts, we take up questions of law. There is a principle involved to which our attention had been called by the argument. It is that, if the hazard be increased by any means-within the control and knowledge of the insured, he may lose the benefit of his policy.
. This is entirely correct. We have not a *659 word to say in opposition. It is the trend of all well-considered decisions. But, as we appreciate the facts, the case is not within the terms of the law. It does not appear that plaintiff had knowledge of the increased hazard. On the contrary, we find, after a careful examination, that he was lulled into a feeling of security by assurances received that, the business was not extrahazardous.
The position is taken that he read the policy.
Conceding for a moment that he read it intelligently (of which we have our doubts), it was for the agent still to let him know whether the pressing club was extrahazardous or not.
This he failed to do. There was no mention of a pressing club as a hazardous risk in the policy, nor the least intimation to that effect.
It was incumbent upon the agent to point out, at the time of examination, all which was hazardous, to go- over the premises, and inspect them and afterward issue the policy. It does not appear that plaintiff concealed anything. In our opinion, the company is bound.
[3] The average layman must, to a certain extent, rely upon the inspection of the agent, and when he asks the agent, as plaintiff did on this occasion, if everything is satisfactory, and the response is that it is, taking it for granted that both were equally in good faith, it must be held that the policy is valid and binding.
Even according to defendant’s theory, and taking all of its agent’s testimony as relates to the press club as true, he should have disapproved of the work of pressing, and should not have-given it his approval in any way.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from is affirmed.
SOMMERVILLE, J., takes no part herein.