241 So.2d 766 (1970)
Whitney Paul BORDELON, Plaintiff-Appellee,
v.
HERCULEAN RISKS, INC., et al., Defendants-Appellants.
No. 3259.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1970.
*767 Stafford, Pitts & Bolen by Grove Stafford, Jr., Alexandria, for defendants-appellants.
Gravel, Roy & Burnes by Chris J. Roy, Alexandria, for plaintiff-appellee.
Adams & Reese by Henry B. Alsobrook, Porteous & Johnson, Ralph E. Orpys, New Orleans, T. C. McLure, Jr., Alexandria, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Whitney Paul Bordelon instituted this suit to recover from a surplus line insurance agent a loss which he sustained and which was not paid by the insurer that issued the policy. The defendants are: (1) Herculean Risks, Inc.; (2) F. C. Pendleton, Jr.; (3) F. C. Pendleton, Jr., Agency; and (4) Alexandria Insurance Underwriters (sometimes referred to as Alexandria Underwriters, Inc.). Plaintiff Bordelon died while the suit was pending, and his surviving widow, Mrs. Ina C. Bordelon, individually and as natural tutrix for her minor children, was substituted as plaintiff in lieu of the decedent.
Judgment was rendered by the trial court in favor of plaintiff and against "Herculean Risks, Inc., and F. C. Pendleton, Jr., d/b/a F. C. Pendleton, Jr., Agency, individually, jointly and in solido," for the sum of $10,000.00. The demands of plaintiff against Alexandria Insurance Underwriters were rejected.
F. C. Pendleton, Jr., F. C. Pendleton, Jr., Agency and Herculean Risks, Inc., have appealed. Plaintiff has answered the appeal demanding that the judgment of the district court be amended to increase the award by adding penalties and attorney's fees.
Since none of the parties seeks to change that part of the judgment which rejects plaintiff's demands against Alexandria Insurance Underwriters, the judgment in favor of that defendant will remain undisturbed. All parties agree that the judgment appealed from is correct insofar as it condemns Herculean Risks, Inc., to pay the sum of $10,000.00 to plaintiff. The principal question presented, therefore, is whether the trial court erred in holding that F. C. Pendleton, Jr., d/b/a F. C. Pendleton, Jr., Agency, is liable in solido with Herculean Risks, Inc., for the amount awarded to plaintiff.
Prior to his death, Bordelon was the owner of a night club in Avoyelles Parish known as The Pelican Club. In June, 1964, he contacted Don E. Musgrove, an insurance agent then doing business as Alexandria Insurance Underwriters, in Alexandria, *768 Louisiana, for the purpose of obtaining a fire insurance policy on the night club. Musgrove was unable to provide the requested insurance coverage through a regularly admitted company, and he did not have a license to write "surplus line" insurance, so he contacted F. C. Pendleton, Jr., an insurance agent in New Orleans, who Musgrove knew to be a licensed surplus line broker. Pendleton informed Musgrove that "he could handle it."
Pursuant to that understanding, a "Certificate of Insurance" or binder, was issued by Pendleton, showing that Bordelon's night club building was insured against fire loss by Lloyds of London for $75,000.00, and that the contents were insured against fire loss by Reliance International Insurance Company for $10,000.00. This binder provided that the insurance was effective from June 11, 1964, to June 11, 1965. Another such binder was issued a few days later, certifying that additional insurance on the building was provided by Lloyds of London from July 1, 1964, to July 1, 1965. Each of these certificates was signed by "F. C. Pendleton, Jr.," and under his signature on each such document there appear the words:
"Authorized Broker
Herculean Risks, Inc."
A fire insurance policy was then issued by Reliance International Insurance Company to "Whitney Paul Bordelon & wife, Ina C. Bordelon, d/b/a Pelican Club," insuring the contents of the Pelican Club against fire loss up to the sum of $10,000.00. This policy was countersigned on June 23, 1964, as follows:
"F. C. Pendleton, Jr., Agent
Herculean Risks, Inc."
The evidence shows that "F. C. Pendleton, Jr., d/b/a F. C. Pendleton, Jr., Agency" was duly licensed under the laws of the State of Louisiana to act as a surplus line insurance broker from April 1, 1964, to March 31, 1965. This license terminated and was not effective after March 31, 1965, but a similar license was issued to Herculean Risks, Inc., effective from and after April 1, 1965. These facts are significant, in that they show that F. C. Pendleton, Jr. was authorized to act as a surplus line broker when the Reliance policy was issued to Bordelon on June 11, 1964, whereas Herculean Risks, Inc., was not authorized to serve as a surplus line broker at that time.
Reliance International Insurance Company was a surplus line insurer, if it in fact existed as an insurance company at all. Its domicile was reported to be in Nassau, Bahamas. It was not qualified to do business in this state, and it had filed no bond with the Louisiana Commissioner of Insurance for the purpose of protecting its assureds.
Bordelon's insured night club, the Pelican Club, was destroyed by fire on June 7, 1965, while the above-described fire insurance policy was in effect. All of the contents were destroyed in that fire. Bordelon made demand upon Reliance for payment of the face amount of the policy, without avail. He then instituted suit against Reliance, that being an entirely separate action from the instant suit, and he recovered judgment against that defendant for the full amount of the policy, plus penalties and attorney's fees. Reliance, however, was nonexistent or completely insolvent, so the judgment obtained by Bordelon was uncollectable. Bordelon then instituted the instant suit to recover the full amount of the policy, plus penalties and attorney's fees, from the brokers who procured the worthless insurance coverage.
After the case was tried, the trial judge held initially that Herculean Risks, Inc., was negligent in having caused the issuance of the policy, in countersigning it and in failing to cancel it "when later more ominous evidence appeared to confirm the obvious fly-by-night nature of Reliance." He also concluded that Pendleton did not personally countersign the policy, that *769 plaintiff had never relied on Pendleton's personal representations, and that Pendleton thus was not liable individually to plaintiff. Judgment was rendered originally, therefore, condemning only Herculean Risks to pay damages to plaintiff.
On an application for new trial filed by plaintiff, the trial judge later amended the judgment originally rendered to hold Pendleton liable, individually and in solido with Herculean, "in order for plaintiff to have a judgment effective against the bond filed with the countersigner and designed to protect against the very risk involved in this matter."
The law provides that if certain insurance coverages cannot be procured from authorized insurers, such coverages, designated as "surplus lines," may be procured from unauthorized insurers, subject to a number of conditions imposed by statute. One condition is that the insurance must be procured through a licensed surplus line broker, and a written request must be filed with that broker for the insurance desired, stating that after diligent effort such insurance has not been procurable from authorized insurers. LSA-R.S. 22:1257. Another condition is that every insurance contract procured as a surplus line coverage shall be countersigned in a specific manner by the surplus line broker. LSA-R.S. 22:1258. And a third condition is that a surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially, and the broker is required to ascertain the financial condition of the unauthorized insurer before placing the insurance therewith. LSA-R.S. 22:1262.
In the instant suit a written request was never filed with Pendleton or Herculean Risks for the insurance required, stating that such insurance was not procurable from authorized insurers, all as required by LSA-R.S. 22:1257. The policy which was issued by Reliance was not countersigned in the manner specifically set out in LSA-R.S. 22:1258. And, the trial judge held that defendants had failed to adequately investigate the financial condition of Reliance before placing the insurance with it, as required by LSA-R.S. 22:1262.
We agree with the holding of the trial judge that defendants failed to exercise reasonable diligence in attempting to ascertain the financial condition of Reliance, as required by the last-cited section of the Revised Statutes, and we have decided to affirm the judgment appealed from on that ground.
The evidence shows that during the month of May, 1964, F. C. Pendleton, Jr., and Reliance International Insurance Company engaged in some correspondence which resulted in an agreement to the effect that Pendleton would act as agent for Reliance in issuing surplus line insurance policies in Louisiana. As already noted, Reliance was not qualified to do business in this state, and Pendleton at that time was licensed as a surplus line insurance broker. On May 20, 1964, Reliance mailed to Pendleton a document which purported to be a "Statement of Resources and Liabilities" of Reliance as of March 31, 1964, showing total assets amounting to $682,247.43. Some of the correspondence which was exchanged at that time indicated that the Reliance Company was domiciled in Nassau, Bahamas, while other letters showed that it had a mailing address in Youngstown, Ohio. The letterhead on the stationery used by Reliance, and the policy which it issued to Bordelon, showed that Reliance was a stock company, but the financial statement which it submitted showed no outstanding capital stock.
On June 8, 1964, Pendleton sent a copy of this financial statement to the Louisiana Commissioner of Insurance. Prior to that time, on May 29, 1964, Pendleton wrote to the Commissioner of Insurance for the State of Ohio, requesting information about Reliance. Pendleton had not heard from either the Louisiana or the Ohio Commissioners of Insurance by the time the policy was issued to Bordelon on June 11, 1964.
*770 Pendleton was unable to contact a representative of Reliance for several weeks following the issuance of the Bordelon policy, so he wrote to the Ohio Commissioner of Insurance again on July 6, 1964, requesting information about the company. On July 10, 1964, the Ohio Commissioner replied that Reliance was not licensed to do business in that state, that the Commissioner of Insurance had no knowledge of its operations or financial strength, and that civil and criminal action was anticipated against the company and its agents or brokers in Youngstown.
On July 11, 1964, Pendleton wrote to the Commissioner of Insurance of the State of Maryland requesting information about Reliance, since he had heard that the company was establishing an office there, but the Commissioner of that state promptly advised that he had no information about such a company. Some additional correspondence was exchanged between Pendleton and the Ohio Commissioner, with the result that Pendleton was unable to obtain any information as to the location, the financial condition or even as to the existence of Reliance as an insurance company.
It is apparent from the evidence that the only information Pendleton had as to the financial condition of Reliance on June 11, 1964, when the policy was issued to Bordelon, was the questionable typed financial statement which he had received about three weeks earlier from a person who represented himself to be the vice president of the company. It is also apparent that Pendleton could easily have ascertained the questionable status and financial condition of the company between the time the financial statement was sent to him and the time the policy was issued to Bordelon, because he did make such a determination within a few days after he began such an investigation subsequent to the time the policy was issued.
On January 15, 1965, a "Directive" was issued by the Louisiana Commissioner of Insurance ordering all surplus line brokers in the state "to cease and desist from placing any insurance with any company operating out of the Bahamas." Pendleton received a copy of that directive shortly after it was issued.
Neither Pendleton nor anyone connected with Herculean Risks advised Bordelon or Alexandria Insurance Underwriters of the above-mentioned directive, or of any of the information which Pendleton had received prior thereto about Reliance. The evidence convinces us, as it did the trial court, that Pendleton allowed the insured, Bordelon, and his local agent, Alexandria Underwriters, to feel that Bordelon was covered by an insurance policy issued by an insurer which was financially sound. The first information which Bordelon had to the contrary was received by him after the loss had been sustained.
As we have already noted, LSA-R.S. 22:1262 provides that a surplus line broker "shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith."
In Kline v. Globe Automobile Finance Company, 100 So.2d 517 (La.App.Orl.Cir. 1958), a broker was held to be liable under circumstances similar to those presented here because the broker failed to ascertain the financial condition of the unauthorized insurer before the insurance was placed with it. The court said:
"There is no doubt of the necessity and legality of resorting to surplus line insurance on certain occasions. Where this is necessary, a surplus line broker no doubt serves a very useful purpose. However, when it becomes necessary that insurance be so placed with an insurer not authorized to do business locally, it is of paramount importance that the broker comply strictly with the requirements of the surplus line statute so that there may thus be substituted by the broker's investigation and the broker's compliance with the requirements the security which would otherwise be provided where the *771 insurance is placed in a locally authorized company which has provided the security which is required of such locally licensed companies."
The general rule also is that an insurance broker who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance and to seasonably notify the client if he, the broker, is unable to obtain the insurance requested. The assured may recover from the broker who places the insurance in an insolvent company, or in a non-existent company, where the actions of the broker were such as to warrant an assumption on the part of the assured that he was covered by suitable insurance and thus protected from claims against which he desired to be insured. Brown v. Stephens Buick Co., 139 So.2d 579 (La.App. 4 Cir. 1962); Foster v. Nunmaker Discount Co., 201 So.2d 215 (La.App. 4 Cir. 1967); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3 Cir. 1963); Appleman, Insurance Law & Practice, Vol. 16, Sec. 8842; 3 Couch on Insurance 2d, Sec. 25:48, p. 354; 44 C.J.S. Insurance § 172, p. 862.
The facts in the instant suit convince us, as they did the trial judge, that Pendleton did not make a reasonable attempt to ascertain the financial condition of Reliance before the policy was issued to Bordelon. If he had made such an effort, he would have discovered quickly that the home office of the company could not be located and that there was a serious question as to whether any such company even existed. We also are convinced that Pendleton breached his obligation to Bordelon in failing to notify the latter long before the fire occurred that Reliance was unsound financially. That information should have been conveyed to Bordelon at least by July, 1964, when Pendleton found that Reliance had not qualified to do business in Ohio, as indicated on its letterheads, and that he could not even locate the company or any of its representatives. He also should have made further inquiries and advised Bordelon when he received the "Directive" from the Louisiana Commissioner in January, 1965, ordering him not to place any insurance with a company operating out of the Bahamas. For these reasons, we conclude that the surplus line broker who procured the Reliance policy is liable to plaintiff for the loss he sustained.
Pendleton contends, however, that the insurance was procured by Herculean Risks, Inc., that he countersigned the policy only in his capacity as President of that corporation, and that he thus is not personally liable to plaintiff for the loss which was sustained. He takes the position that Herculean Risks either was a licensed surplus line broker, or that Pendleton in good faith thought that it was, and that Bordelon had tacitly accepted the policy as countersigned by that corporation.
We agree with the trial judge that Pendleton is personally liable with Herculean Risks for the loss sustained by plaintiff. In the first place, Pendleton's signature on the policy does not indicate that he signed as President of the corporation. As we have already noted, he countersigned the policy "F. C. Pendleton, Jr.," and immediately following his signature is the word "agent." The name of the corporation, "Herculean Risks, Inc.," is typed under Pendleton's signature. We consider the countersignature to be by Pendleton personally, as agent for the insurer, Reliance, and that the name "Herculean Risks, Inc.," typed under his signature, merely indicates that he was doing business in that name. Secondly, some correspondence which was filed in evidence shows that Pendleton procured the policy personally. In a letter which he wrote to Reliance on June 11, 1964, for instance, he informed the addressee that, "I have bound the following fire coverages effective this date," and thereafter he listed the Bordelon coverage as one of them. The letter was signed by Pendleton personally. And, finally, Alexandria Insurance Underwriters contacted *772 Pendleton personally to obtain the insurance coverage for Bordelon. The Alexandria agent knew, or at least he correctly assumed, that Pendleton was a licensed surplus line broker, and Pendleton actually "procured" the insurance, regardless of whose countersignature appears on the policy. In their dealings with Pendleton, Bordelon and Alexandria Underwriters had the right to assume that they would be protected by the bond which the surplus line broker is required to file with the Insurance Commissioner, and Pendleton allowed the insured to believe that he had that security. Under these facts, we feel that Pendleton is personally liable for the loss sustained by the insured under the Reliance policy.
Plaintiff contends in his answer to the appeal that the judgment of the trial court should be amended to award penalties and attorney's fees. This argument is based largely on the fact that the judgment rendered in favor of plaintiff and against Reliance, in a separate suit, included an award of penalties and attorney's fee. Plaintiff takes the position that since defendant's actions were "fraudulent and/or in the nature of an intentional tort," and since the earlier judgment against Reliance condemns it to pay these items, we should consider them as elements of damages to be awarded here. As authority for this claim plaintiff cites: LSA-C.C. art. 2324; LSA-R.S. 22:1268; and LSA-R.S. 22:1211-22:1214.
We have considered the authorities cited by plaintiff, but have concluded that they do not warrant an award of penalties and attorney's fees here. We find no error in that part of the judgment rendered by the trial court which rejects plaintiff's demands for penalties and attorney's fees.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to the appellants.
Affirmed.