271 So.2d 889 (1973)
Joan Morel KIERAN, wife of/and John J. Kieran, Jr.
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK et al.
No. 5175.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1973.
*890 Sidney W. Provensal, Jr., New Orleans, for third party plaintiff and appellant, James Wellington Hughes.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, H. Martin Hunley, Jr., and William S. Penick, New Orleans, for third party defendant and appellee, Gillis, Hulse & Colcock.
Before SAMUEL, CHASEZ and STOULIG, JJ.
SAMUEL, Judge.
This matter involves a third party demand by James Wellington Hughes, d/b/a Pel Hughes Letter Service, against Gillis, Hulse & Colcock, Inc., an insurance agency, by which Hughes seeks to recover $20,000, the difference between the actual amount of automobile public liability insurance obtained for him by the third party defendant and the sum of $25,000 claimed by him to be the amount of coverage which that defendant allegedly negligently led him to believe he had.
The original suit was for serious personal injuries incurred by Mrs. Joan Kieran on February 1, 1968 when she was struck by a station wagon driven in the course and scope of his employment by an 18 year old employee of Pel Hughes Letter Service. Prior to trial of the main demand the original plaintiffs accepted a $115,000 compromise and dismissed their suit, reserving to Hughes the right to proceed on his third party demand. After trial there was judgment dismissing the third party demand. Hughes has appealed.
The basic facts are undisputed. The Hughes family consisted of Mr. Hughes, a full-time railroad employee, his wife, Mrs. Alice Hughes, who actively managed the family business, a son Victor, under 25 years of age, an older son and a daughter. Mrs. June Cassard handled the Hughes insurance account for the defendant agency. The account consisted of a family automobile policy on two cars and a fire insurance policy on family real estate. Business insurance for the Letter Service was handled by another agency. The accident occurred while a male, other than Victor Hughes, under 25 years of age and employed in the business, was driving one of the cars covered by the family liability policy.
For many years the automobile insurance had been placed with Travelers because Mr. Eddie Cambre, a close friend of the Hughes family, was assistant claims manager. On December 2, 1966 Mrs. Cassard wrote to Mrs. Hughes informing her Travelers required a renewal application for the automobile policy which would expire on January 5, 1967. Receiving no answer, Mrs. Cassard phoned January 17, 1967 and mailed another application to Mrs. Hughes, *891 who apparently had lost or misplaced the original. When returned, the application stated Victor Hughes, the under 25 year old son, drove one of the insured automobiles approximately 60% of the time. Because Victor had a history of traffic accidents and citations, the Travelers underwriter imposed a lower liability limit of $5,000 per person, $10,000 per accident on the policy. Knowing of Cambre's friendship with the Hughes, Mrs. Cassard informed him of that action and asked his advice. He returned her letter with the notation "June, you give them the news."
Mrs. Cassard wrote to Mrs. Hughes informing her of Travelers position and stating excess insurance was available if they desired the same. Prior to the issuance of the renewal, Cambre wrote to the Travelers' underwriter requesting that if the $5,000 restriction was necessary it would apply only to Victor Hughes "and not other members of the household."
Subsequently Mrs. Cassard obtained the policy and sent it to Mrs. Hughes on May 30, 1967 with a transmittal letter which forms the primary basis of Hughes' claim. In pertinent part, the letter reads:
". . . on the face of the policy the coverage shows $5/10,000 Bodily Injury. . . . This applies only while your son is driving, as the higher limits of $25/50,000 . . . apply when you, Mr. Hughes or your daughter is driving.. . .
"As you remember, Travelers wanted to restrict the limits to $5/10,000 and $5,000 on the car your son drives and they offered to write the excess limits. After Eddie spoke to them they came back with this which is better, of course."
The family automobile policy accompanying the letter afforded $5/$10,000 bodily injury liability coverage on two automobiles with a Special Increase Limits Endorsement providing liability limits of $25,000 for each person and $50,000 for each occurrence "except with respect to occurrences which take place while the automobile is being operated by a male person under 25 years of age".
The Hughes family kept the policy in their possession without complaint during the remainder of 1967. When the expiration date arrived on January 5, 1968 Mrs. Cassard obtained a policy with identical terms from Commercial Union Insurance Company because Gillis, Hulse & Colcock, Inc. had ceased to represent Travelers. The evidence establishes that Commercial Union is a substantial company and the Hughes were not prejudiced by the substitution of insurers although they were not notified of the change. This policy, with an inception date of January 5, 1968, was delivered to the Hughes on February 8, 1968, seven days after the accident of February 1. Commercial Union honored its obligation by paying the $5,000 policy limit.
The question before us is one of fact: Were the Hughes led to believe they were covered by a $25,000 liability policy by Mrs. Cassard and, if so, did they rely on it to their detriment?
Testimony relating thereto was given by Mr. and Mrs. Hughes (through depositions introduced in evidence), Mrs. Cassard and Mrs. Cambre.
Mrs. Hughes did not remember receiving any letters from Mrs. Cassard concerning the Travelers 1967 policy to the effect the company wanted to limit coverage to $5,000. She claimed to have misunderstood the May 30, 1967 transmittal letter which accompanied the policy to mean there was $5,000 coverage only when her son Victor was driving the automobile and $25,000 when anyone else, regardless of age and including employees, was driving the vehicle. She and not Mr. Hughes handled all of their business with the defendant agency. We note the letter and policy both stated the basic policy coverage was $5/$10,000, and the endorsement stated the limit of $25/$50,000 applied when the vehicle was driven by anyone other than a male under age 25. She knew the Travelers *892 policy expired January 5, 1968 and expected it to be renewed under the terms of the previous policy.
Mr. Hughes stated Mrs. Cassard handled the family automobile policy and this business was conducted between his wife and Mrs. Cassard. When insurance questions came up he dealt with Mr. Cambre, his friend of many years. After receiving the policy and letter of transmittal of May 30, 1967 he discussed it with Mr. Cambre who told him not to worry, he was covered. It was his impression from the letter and his discussion with Cambre that coverage was $25,000 for any employee who might be driving. After the accident he notified Cambre, not Mrs. Cassard. His impression as to coverage was derived primarily from his discussion with Cambre. Until after the accident neither Mr. or Mrs. Hughes was aware the policy was not with Travelers. However, the liability provisions of the two policies were identical.
Mr. Cambre testified he did write to the underwriter requesting the $5,000 restriction be placed only on Victor and "not other members of the household". He knew the underwriter was willing to write excess insurance and thought Hughes had obtained it. It is clear from his testimony and that of Mrs. Cassard that he and not Mrs. Cassard arranged the coverage as it was eventually written.
Mrs. Cassard's testimony and evidence introduced on behalf of defendant makes it clear there were abundant efforts on her part to keep the Hughes covered at all times by a liability policy on the automobiles and to keep Mrs. Hughes informed by telephone and letter. A few years prior to the issuance of the 1967 policy Mrs. Cassard had taken over her deceased husband's insurance business which included the Hughes account. Although she knew Hughes maintained a business, there is no evidence Mrs. Cassard ever was informed the family automobiles were used in the business by its employees; a commercial rate was never charged. And although she had indicated excess coverage would be available if desired, the same was never requested.
Articles 3016 and 3017 of the Louisiana Civil Code provide a broker who is employed to negotiate a matter between two parties is the agent of both. Because of the double representation he is a fiduciary obligated to perform his duties faithfully for both parties. Article 3003 of the Civil Code states an agent is responsible not only for his unfaithfulness but also for his fault and neglect. An insurance agent or broker who undertakes to procure insurance for another owes a duty to his client to use reasonable diligence in attempting to place the insurance timely and to notify the client if he is unable to obtain the same. A prospective insured may recover loss sustained as a result of the agent's failure to procure the desired coverage when the agent's actions warrant an assumption by the insured that he was suitably covered. Karam v. St. Paul Fire & Marine Insurance Co., La.App., 265 So.2d 821; Bordelon v. Herculean Risks, Inc., La.App., 241 So.2d 766; Arceneaux v. Bellard, La.App., 149 So.2d 444. The burden of proof is on the plaintiff to show the defendant agent agreed to provide the coverage. Arceneaux v. Bellard, supra.
We find no negligence or fault on the part of Mrs. Cassard. On the contrary, the fault, if any, was on the Hughes' part in not advising Mrs. Cassard the cars were used in the family business and in not reading the clear provisions of their policy. See Hanover Insurance Company v. Orgeron, La.App., 206 So.2d 814.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.