357 So.2d 1234 (1978)
William Alto PORTER and Gladys Lorene Porter, Plaintiffs-Appellants,
v.
UTICA MUTUAL INSURANCE COMPANY and Harold Breard d/b/a Breard Mutual Insurance Agency, Defendants-Appellees.
No. 13500.
Court of Appeal of Louisiana, Second Circuit.
March 27, 1978.
*1235 Davenport, Files, Kelly & Marsh by Thomas W. Davenport, Jr., Monroe, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by R. L. Davis, Jr., Monroe, for defendants-appellees.
Before BOLIN, HALL and JONES, JJ.
HALL, Judge.
This is a suit by homeowners, Mr. and Mrs. W. A. Porter, against an insurance agent, Harold Breard d/b/a Breard Mutual Insurance Agency, and his errors and omissions insurer, Utica Mutual Insurance Company. Plaintiffs seek to recover the value of their residence in Union Parish and its contents which were destroyed by fire on January 29, 1976. Plaintiffs' claims are based on the alleged failure of the defendant-agent to obtain fire insurance coverage on the Union Parish residence after being requested to do so and on a failure of the defendant to advise them that the amount of coverage on the contents provided by a homeowner's policy covering a former residence in Monroe was reduced when the contents were moved from the old to the new home. Defendants deny that insurance coverage on the Union Parish residence was ever requested. Defendants contend that the defendant-agent had no duty to specifically advise plaintiffs concerning the reduced amount of coverage on the contents, which was provided in the homeowner's insurance policy. Alternatively, defendants contend plaintiffs were guilty *1236 of contributory negligence in failing to determine whether insurance was in existence on the Union Parish property and in failing to secure adequate insurance.
The case was tried before a jury which rendered a special verdict by answering written questions submitted to it by the court pursuant to LSA-C.C.P. Art. 1811. Judgment was rendered reciting that the answers to the interrogatories established that plaintiffs' demands should be rejected because of contributory negligence and ordering the dismissal of plaintiffs' demands. After denial of their motion for a new trial, plaintiffs appealed.
The issues on appeal, broadly stated, are:
(1) Is the judgment of the district court correct insofar as it rejects plaintiffs' claim for the value of their residence destroyed by fire, which claim is based on allegations that the insurance agent failed to obtain requested insurance coverage?
(2) Is the judgment of the district court correct insofar as it rejected plaintiffs' claim for the full limits of the contents coverage provided under the homeowner's policy written on their residence in Monroe, which claim is based on allegations that the insurance agent failed to advise them of the policy provisions reducing coverage when the contents were moved to another residence?
The Evidence
Plaintiffs began doing business with the Breard Insurance Agency in the 1950's when they bought a home in Monroe and obtained fire and extended coverage insurance through the Breard agency. The insurance on their Monroe home was renewed from time to time, was converted to a homeowner's policy which also provided coverage for contents or "unscheduled personal property", and the limits were increased. Plaintiffs also obtained insurance on their automobiles through the Breard agency.
In August 1975 plaintiffs contracted to buy the residence in Union Parish which was located in a rural area on a five-acre tract. Plaintiffs arranged for financing with the Farmerville State Bank, the loan to be secured by a second mortgage on the Monroe residence. The bank required that plaintiffs obtain an endorsement to their homeowner's policy covering the Monroe residence naming the bank as second mortgagee. The bank apparently did not take a mortgage on the Union Parish property and made no requirement concerning insurance on that property.
A few days before the transaction was to be closed Mr. Porter telephoned Mr. Breard and advised him of the requirement of an endorsement to the homeowner's policy on the Monroe property. Mr. Porter testified that he also told Mr. Breard that he wanted coverage on the Union Parish residence and that Mr. Breard said "okay." Porter's testimony as to what he said to Breard on the telephone is corroborated to some extent by the testimony of his wife and daughter, who overheard his end of the conversation. Porter's testimony was that he assumed that Breard would tend to all of the details and obtain adequate coverage, as he had done in the past. The next day Mr. Porter picked up the endorsement to the homeowner's policy at the agency for delivery to the bank.
Breard's version of the telephone conversation was that Mr. Porter talked to him about the endorsement to the homeowner's policy but that Mr. Porter told him that he intended to fix up the Union Parish residence and would discuss insurance coverage on that property at a later time. Mrs. Breard, who worked in her husband's agency, testified that when Mr. Porter came by to pick up the endorsement she asked him about coverage on the Union Parish property and Mr. Porter said they would discuss that later. Mrs. Breard and another employee of the agency testified they asked Mrs. Porter on two subsequent occasions when they were talking about other insurance matters, about insurance on the Union Parish property but were told that the Porters were not interested in insurance at that time.
*1237 After completing the purchase of the Union Parish property, the Porters moved to that residence, moving their furniture and personal belongings from the Monroe home to the Union Parish home. No insurance policy was ever issued on the Union Parish residence, nor was any policy delivered to the Porters, nor was any statement for premium sent to them.
On January 29, 1976 the Union Parish residence and its contents were destroyed by fire. When Mrs. Porter called Breard to inform him about the fire he told her that there was no insurance on the residence and that the amount of insurance on the contents was reduced from $7,500 to $1,000 in accordance with the homeowner's policy provisions. Breard testified that Mrs. Porter stated she knew there was no insurance on the residence but was unaware of the provisions of the policy concerning the amount of coverage on the contents. This suit followed.
First Issue
In regard to the claim based on failure to obtain insurance coverage on the Union Parish residence, the jury returned the following special verdict:
1. (a) Did the Porters specifically request an insurance policy on the Union Parish house? (Yes or No) Yes
(b) If yes, did Mr. Breard agree to procure the requested policy? (Yes or No) No
(c) If your answer to 1(a) is "Yes" and your answer to 1(b) is "No", did the actions of Mr. Breard, after the request, cause the Porters to reasonably assume that they had the policy requested? (Yes or No) Yes
2. If your answer to 1(b) or 1(c) is "Yes", was Mr. Breard negligent in failing to obtain the policy? (Yes or No) Yes
3. If your answer to 2 is "Yes", did such negligence proximately cause the losses of which the Porters complain? (Yes or No) Yes
4. If your answer to 3 is "Yes", answer the following questions?
(a) Did the Porters exercise reasonable care to secure a policy on the Union Parish house? (Yes or No) No
(b) If not, was their failure to do so a proximate cause of their losses? (Yes or No) Yes
Appellant argues that the jury's answers to question 4 are inconsistent with the answers to question 1 and that since the jury found the Porters specifically requested an insurance policy and the actions of Breard caused the Porters to reasonably assume that they had the policy requested, judgment should have been rendered for the plaintiffs.
The answers to the questions are confusing and inconsistent. Although the jury found that Mr. Breard did not agree to procure the requested policy, it found that his actions caused the Porters to reasonably assume they had the policy. Although the jury found that the Porters reasonably assumed they had the policy, the jury also found that the Porters did not exercise reasonable care to secure the policy. The inconsistent and confusing findings of the jury do not necessarily support judgment either for the plaintiffs or the defendants. For this reason we are unable to give the usual weight to the jury's findings and it becomes our duty to review the evidence and to render a proper judgment in accordance with applicable law. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Andrepont v. Naquin, 345 So.2d 1216 (La. App. 1st Cir. 1977).
The applicable law is concisely stated in Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973):
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of *1238 the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. C.C. 3002 and 3003; Kieran v. Commercial Union Insurance Company of New York, 271 So.2d 889 (La.App. 4th Cir. 1973); Hight v. Stewart, 265 So.2d 640 (La.App. 2d Cir. 1972); Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3d Cir. 1970); Shrv Teletype Coin Exchange, Inc. v. Commercial Union Insurance Company of New York, 191 So.2d 208 (La.App. 2d Cir. 1966); Arceneaux v. Bellard, 149 So.2d 444 (La.App. 3d Cir. 1963); Brown v. Stephens Buick Company, 139 So.2d 579 (La.App. 4th Cir. 1962).
In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured.
The strong preponderance of the evidence is that Mr. Porter, even if he intended to obtain coverage on the Union Parish residence, did not effectively communicate that request to Breard. There was no discussion of the amount of insurance, the kind of policy, the amount of premium, or any other details ordinarily involved in the securing of insurance. The evidence does not support a finding that Breard agreed to procure the requested policy. Most clearly, plaintiffs were not warranted in assuming that insurance coverage on the Union Parish property had been obtained by the agent. Although more than five months elapsed from the date plaintiff allegedly requested coverage to the date of the fire, plaintiff never received a policy nor a bill for a premium and, according to their own testimony, never made any inquiries of the agent with regard to the policy or the bill. Under these circumstances, plaintiffs were not justified in assuming that they had fire insurance coverage on the Union Parish residence. See Brown v. Stephens Buick Company, 139 So.2d 579 (La.App. 4th Cir. 1962).
Having failed to prove several of the elements necessary to recover from the insurance agent, plaintiffs' demands for recovery of the value of the residence destroyed by fire were correctly rejected.
Second Issue
The homeowner's policy issued on the Monroe residence provided coverage in the amount of $7,500 for unscheduled personal property while on the insured premises. The policy specifically provided, however, that the limit of the company's liability for unscheduled personal property away from the insured premises was equal to ten percent of the $7,500, but in no event less than $1,000. Therefore, the amount of coverage provided under the homeowner's policy for the personal property located at the Union Parish residence was $1,000.
Plaintiffs argue that Breard, as their insurance agent, had a duty to inform them of the reduction in coverage when he learned that they moved their furniture and personal belongings to the Union Parish residence and that having failed to so advise them the agent is liable for the difference between $7,500 and $1,000.
In connection with this issue the jury returned the following special verdict:
1. (a) Did the Porters request Mr. Breard to inform them as to the limitations on the contents coverage under their Monroe house policy? (Yes or No) No
(b) If not, was anything done or said which reasonably misled the Porters to believe the contents had full coverage when moved to another location? (Yes or No) Yes
2. If your answer to 1(a) or 1(b) is "Yes", was Mr. Breard negligent in his actions with the Porters in reference to the limitations on contents coverage? (Yes or No) Yes
3. If your answer to 2 is "Yes", did such negligence proximately cause the *1239 losses on contents of which the Porters complain? (Yes or No) Yes
4. If your answer to 3 is "Yes", please answer the following questions:
(a) Did the Porters act with reasonable care in informing themselves as to the limitations on contents coverage? (Yes or No) No
(b) If not, was their failure to do so a proximate cause of their losses on contents? (Yes or No) Yes
Plaintiffs timely objected to questions 1(a) and (b) and 4(a) and (b) and also objected to the following charge given by the court to the jury:
"Now with respect to the terms and conditions of a policy, the agent is not under a duty to inform the client thereof unless requested. On the contrary, in the absence of something said or done to mislead him, or put him off guard, it is the duty of an insured to inform himself as to such provisions of his policy."
The only factual dispute relating to the contents coverage issue is whether Breard had knowledge that plaintiffs had moved their personal property from the Monroe residence to the Union Parish residence. There is no contention that plaintiffs ever so advised him, but plaintiffs argue that he should have known because he was advised of their change of address and should have known they moved their furniture and belongings to their new home. We find from the evidence that Breard did not have actual knowledge that the personal property had been moved and that nothing in the transaction between the parties was calculated to draw his special attention to that fact as it might relate to the plaintiffs' insurance coverage. In any event, under the circumstances of this case, he had no duty to affirmatively advise plaintiffs concerning the express provisions of their insurance policy as it related to the amount of coverage on their personal property. The jury's finding of negligence on the part of Breard is not warranted under the facts or as a matter of law.
The charge made to the jury is a fair statement of the law concerning the duty of an agent to inform his client with respect to the terms and conditions of a policy. See 44 C.J.S. Insurance § 172 and Farber v. Great American Insurance Company, 406 F.2d 1228, 1233 (7th Cir. 1969).
The only case cited by plaintiffs in support of their position is Mongeau v. Liverpool & London & Globe Ins. Co. of Liverpool, Eng., 128 La. 654, 55 So. 6 (1911). In that case the agent was guilty of conduct that lulled the insured into believing he had coverage. The facts in Mongeau reflect that when the insurance agent was inspecting the property he was specifically asked by the insured whether everything was satisfactory. These circumstances are not present in the case before this court.
The defendant-agent breached no duty owed to the plaintiffs in connection with the contents coverage and plaintiffs' claim in this respect was properly rejected.
At appellants' costs the judgment of the district court is affirmed.