COVINGTON, Judge.
Plaintiffs, as assignees, seek to recover against the errors and omissions insurer of an insurance broker for damages allegedly resulting from the broker’s failure to provide the assignor automobile liability insurance in accordance with his request. From an adverse judgment in the trial court, defendant, St. Paul Fire and Marine Insurance Company, has perfected the present appeal.
Plaintiffs are the children of the late Donald J. and Bobbie C. Hebert, who were killed in a traffic accident, which occurred December 23, 1976. As a result of the deaths of their parents, plaintiffs filed a wrongful death action[1] against, among others, Champ’s Truck Service, Inc.; Cavalier Insurance Company, Champ’s automobile liability insurer; and Interstate Fire & Casualty Company, a surplus line carrier for the Champ’s vehicle.
For several years prior to the accident resulting in the death of plaintiff’s parents, the president of Champ’s and its primary shareholder, Ford P. “Champ” Luscy, had obtained Champ’s liability insurance through Louisiana Companies, an insurance brokerage firm. Until late 1975, the policy limits requested by and obtained for Champ’s by Louisiana Companies were $100,000 per person and $300,000 per accident (100/300).
In late 1975, Luscy undertook an expansion of his trucking business. Included within this expansion was the acquisition of Kaiser Aluminum as a client. Kaiser required its haulers to have liability insurance with policy limits of $250,000 per person and $500,000 per accident (250/500). Hence, Luscy telephoned Louisiana Companies and spoke with its vice-president, Robert Grace, Jr. During this conversation, Luscy informed Grace that he needed and wanted that additional coverage, and requested Grace to send a certificate to Kaiser attesting to those policy limits.
As a result of Luscy.’s request for increased coverage, Grace consulted Markel Services, an insurance broker specializing in insurance for trucking companies. Initially, Markel tried to get Cavalier, Champ’s primary carrier, to increase its coverage to the required amount, but Cavalier declined to do so. Then, Markel was able to obtain a surplus line policy for Champ’s through Interstate, providing coverage of $150,000 per person and $200,000 per accident in the event that Champ’s liability for any accident exceeded the coverage provided by Cavalier. The policy sent to Luscy by Interstate on its face indicated that Champ’s now had coverage with total limits of $250,-000 per person and $500,000 per accident.
After being advised of the excess policy, Louisiana Companies forwarded to Kaiser a certificate showing Champ’s new policy limits. Although the policy limits were increased, it was not explained to Luscy that, under certain circumstances, the full amount to be paid by the combined policies was $400,000, instead of the $500,000 shown on the face of the policy.
At the time of the accident in which plaintiffs’ parents were killed, the foregoing was the status of the insurance coverage of Champ’s. However, until two weeks prior to the scheduled trial date of the wrongful death suit, Luscy believed that he had actual 250/500 coverage. At that time, Luscy was notified that his insurers would only pay a total of $400,000 under their policies.[2] Nevertheless, in view of the *1384 strong possibility of a higher judgment if the case went to trial, Luscy settled with the plaintiffs for the sum of $500,000. Of this amount, the insurers paid $400,000, with the balance of $100,000 on the settlement represented by Luscy’s promissory note in that amount. The plaintiffs were also assigned Luscy’s cause of action against Louisiana Companies arising from its alleged fault in failing to secure adequate insurance, with policy limits of 250/500 as requested. Pursuant to that assignment, plaintiffs brought the present action against Louisiana Companies’ errors and omissions insurer, St. Paul.
At the conclusion of trial, the trial court rendered judgment for plaintiffs against St. Paul in the amount of $100,000, with interest and costs. The trial court, in its oral reasons, found that Louisiana Companies had failed to provide the coverage requested by Champ’s and that it had been at fault in failing to inform Champ’s of its inability to acquire the requested coverage. Moreover, the trial court concluded that Luscy was not at fault in failing to discover from a reading of the policy that he was not provided with the requested coverage.
On appeal, defendant asserts the following three specifications of error:
“I.
“The District Court erred in finding that the policy of insurance obtained by Louisiana Companies was not the precise coverage specified and ordered by Champ’s Trucking [Truck] Service, Inc.
“II.
“The District Court erred in holding that Mr. Luscy could reasonably have believed the maximum coverage of $500,000 applied in an accident where only two persons sustained bodily injury. The Court also erred in failing to hold the insured to his duty to inspect the policy after it is delivered to see if it meets his specifications.
“HI.
“The District Court erred in concluding that the insurance broker had a legal duty to warn his client that the maximum coverage of $500,000 would apply only where three or more people sustained bodily injury — where the client already knew of this requirement in the base policy — and no explanation for individual examples of coverage was ever requested by the client.”

Specifications I and II

These specifications of error question factual findings of the trial court. See Kieran v. Commercial Union Insurance Company of New York, 271 So.2d 889 (La.App. 4 Cir. 1973). In the first specification of error, defendant attacks the finding of the trial court that Louisiana Companies failed to procure the proper coverage as requested by Luscy. The basis of this attack is that the combined coverage provided to Champ’s by Cavalier and Interstate actually amounted to 250/500 coverage. In this regard, defendant refers to the testimony of Grace to the effect that the combination of Cavalier’s 100/300 coverage and Interstate’s 150/200 coverage amounted to 250/500 coverage.
The trial court found that, when Luscy requested 250/500 coverage, he was seeking insurance which would pay $250,000 to each person, with a $500,000 total, based upon the evidence that Luscy was a layman as to insurance matters and that, under the circumstances, he acted reasonably in believing that a 250/500 policy would pay the maximum amounts if two persons were injured. There is no dispute that the coverage actually procured did not provide the maximum limits in the situation that actually occurred.
*1385 It is well established that an insurance agent or broker who undertakes to procure insurance for a client owes an obligation to use reasonable diligence in attempting to place or obtain the requested insurance and has a duty to notify the client promptly if it has failed to obtain the requested insurance. The client may recover from the broker or agent the loss sustained as a result of the failure to procure the desired coverage if the actions of the broker or agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973); Trahan v. Bailey’s Equipment Rentals, Inc., 383 So.2d 1072 (La.App. 3 Cir. 1980), writs denied, 390 So.2d 1342 and 391 So.2d 455 (La.1980).
After a thorough review of the evidence, we are convinced that the trial court’s findings are fully supported by the record.
In the second specification of error, defendant contends that the trial court erred in failing to require of Lusey to inspect the insurance policy to see if it furnished the requested coverage; or if the trial court did impose such duty, it erred in finding that Luscy had met this duty. In support of its contention that an insured has a duty to inspect the policy to ascertain if it meets the requested coverage, defendant relies on Kieran v. Commercial Union Insurance Company of New York, supra.
In Rieran, the court affirmed a judgment in favor of the insurance broker, concluding that the trial court had not erred in finding that the broker had not breached his duty to use reasonable diligence to procure the requested coverage and to notify the client if he failed to do so. In the course of its opinion the Court made the following statement: ,
“On the contrary, the fault, if any, was on the Hughes’ [clients] part in not advising Mrs. Cassard [broker] the cars were used in the family business and in not reading the clear provisions of their policy. See Hanover Insurance Company v. Orgeron, La.App., 206 So.2d 814.”
Rieran is distinguishable from the instant case. Luscy clearly informed the broker of the needed coverage. The broker did not use reasonable diligence in procuring the requested coverage, yet it did not so inform Luscy of the situation. No information was withheld by Lusey from the broker, as was done in the Rieran case. Moreover, the face of the policy suggests, if it does not indicate, that Luscy was furnished with the requested coverage. There was no fault on the part of Luscy.

Specification III

In its last specification of error, defendant contends that, under the circumstances of the instant case, Louisiana Companies had no duty to inform Luscy that it was unable to procure the specifically requested insurance coverage, contending that Luscy already knew that his primary policy (with Cavalier) would only pay $300,-000 where three or more persons were injured or killed, so he must have known that the excess coverage contemplates the same type of situation. For this contention, defendant cites Porter v. Utica Mutual Insurance Company, 357 So.2d 1234 (La.App. 2 Cir. 1978).
Porter does not support the proposition advanced by defendant. The basis of the Porter decision is that the plaintiffs did not request the type of coverage at issue, and that the agent did not agree to procure the particular coverage. In the instant ease, the record establishes that Luscy did request a specific increased coverage, and Louisiana Companies undertook to procure it; but the broker failed to obtain the requested coverage, without informing the client of the situation.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, St. Paul Fire and Marine Insurance Company.
AFFIRMED.
WATKINS, J., dissents and assigns reasons.

. We previously issued an opinion in connection with the wrongful death action which is styled Hebert v. Ordoyne, 388 So.2d 407 (La. App. 1 Cir. 1980).

. The $400,000 total liability of the insurer is reckoned as follows: Cavalier, Champ’s primary insurer, was only obligated to pay a maximum of $100,000 per person injured or killed as a result of the fault of Champ’s. Since two *1384 persons, Mr. and Mrs. Hebert, were killed, Cavalier’s liability was limited to $200,000, even though its maximum policy limits were $300,-000 (if another person had been killed or injured through Champ’s fault). The maximum limits on Interstate’s excess policy were fixed at $200,000. Hence, under these circumstances, the total maximum limits amounted to $400,000.