WATKINS, Judge,
dissenting.
I dissent from the majority’s holding that the insurance agency, Louisiana Companies, was at fault or negligent, and that, hence, St. Paul, its errors and omissions insurer, is liable for the amount of the note Luscy was forced to sign in effecting a settlement of the tort claim.
Luscy, President of Champ’s Truck Service conveyed ambiguous instructions to Grace, the Vice President of the agency, Louisiana Companies. Although there is some variation in the testimony of Grace and Luscy on the instructions given by Lus-cy to Grace in obtaining the excess insurance, it is apparent that what happened was that Luscy told Grace via telephone that he wanted additional insurance up to $250,000-$500,000 to satisfy the requirements of Kaiser Aluminum Chemical Company, with which Champs Truck Service wished to enter into hauling contracts. The excess insurance obtained from Interstate Fire & Casualty Company met Kaiser’s requirement, as is evidenced by Kaiser’s acceptance of the certificate of insurance setting forth Champ’s insurance. The verbal communication between Champ’s and Louisiana Companies through Luscy and Grace is ambiguous. It could be taken to mean that Luscy wanted additional insurance to obtain a straight $250,000-$500,000 policy, under which, the evidence reveals, there would have been full $500,000 coverage if two or more persons had been injured in a single occurrence. However, the verbal communication could also be taken to mean that Luscy merely wanted $250,000-$500,000 coverage sufficient to meet Kaiser’s requirement. The insurance did meet or satisfy Kaiser’s requirements, and did in fact provide $250,000-$500,000 coverage. Thus, from Grace’s viewpoint, and I suspect from Luscy’s viewpoint until the accident giving rise to the present litigation occurred, Champ’s or Luscy was afforded the insurance sought. It was only after the accident in question occurred that Luscy objected to the policy.
The terms of the policy are very clear. The pertinent portions of the face of the excess policy read as follows:
"INTERSTATE FIRE & CASUALTY COMPANY Chicago, Illinois
3. Schedule of Underlying Insurance: Insurer and Policy Number Cavalier Insurance #9638140-013
4. Limits of Liability: The limit of the Company's liability shall be stated herein, subject to all the terms of this policy having reference thereto.
COLUMN 1_IN EXCESS OF COLUMN 11 COLUMN 111
Underlying
Coverage_Company Limits_Limits_Total Limits
A Bodily injury $150,000.00 Each Person $100,000.00 $250,000.00
Automobile $200,000.00 Each Occurrence $300,000.00 $500,000.00 "
The purchaser of an insurance policy has a duty to inspect his policy when it is delivered to him and to determine whether it meets his specifications. Kieran v. Commercial Union Insurance Co. of N. Y., 271 So.2d 889 (La.App. 4th Cir. 1973). In this case it requires only simple arithmetic to see that when there are underlying limits of $100,000 for each person, if two persons are injured in a single occurrence, those underlying limits add up to $200,000, and that sum added to the $200,000 limit under the excess coverage offered by Interstate adds up to $400,000, which is the coverage Champ’s was in fact supplied. It would take a hasty, superficial, and unbusinesslike reading of the policy limits, which appear on the face of the policy, to conclude that in such a situation the total limit would have been $500,000.
I am convinced that the excess policy provided by Louisiana Companies fairly met *1387 the coverage requirements specified by Lus-cy. Luscy’s testimony indicates that at best, from his view, his instructions to Grace were inexact and ambiguous. The excess policy clearly complied with a reasonable understanding of his instructions to Grace. If Luscy had properly inspected the policy upon receipt he would have timely had the opportunity to notify Grace that it did not contain the coverage that he now claims he had originally requested.
I, therefore, find no fault on the part of Louisiana Companies, and respectfully dissent from the holding of the majority.