GARRISON, Judge.
Plaintiffs, Eagle, Inc. and The Cajun Company d/b/a Cajun Insulation Company, filed suit for recovery of insurance premiums against their insurance agent, Alexander and Alexander, Inc., and the errors and omissions insurer of their insurance agent, ABC Insurance Company. The plaintiffs later learned that the defendant’s errors and omissions insurer was Underwriters at Lloyd’s London and substituted that party as a defendant for ABC Insurance Company. Plaintiffs are insulation contractors and distributors. Eagle, Inc. owns 100% of the stock of The Cajun Company d/b/a Cajun Insulation Company. In their petition, plaintiffs alleged that defendant Alexander and Alexander, Inc. was negligent in its handling of plaintiff’s comprehensive general liability insurance policy obtained through National Union Fire Insurance Company for the period of May 23, 1985 to May 23, 1986.
According to plaintiffs, an audit conducted by National Union Fire Insurance Company following the 1985-r86 policy period revealed that plaintiffs were entitled to a *554 premium refund in the amount of $40,-449.00. According to plaintiffs’ calculations, they should have received an additional $50,445.72 premium refund plus interest. When plaintiffs inquired about the additional refund which they believed was owed to them, they learned through their insurance agent that the difference between these two figures was attributable to the fact that the 1985-86 policy was based on gross payroll figures whereas plaintiffs’ calculations were based upon their belief that the policy was based on limited payroll figures because most of their policies in past years had been based on limited payroll figures. A representative of the defendant explained at trial that limited payroll projections have a maximum weekly amount per employee whereas gross payroll projections have no limitations; therefore, use of the latter results in higher insurance premiums.
Plaintiffs claim that their insurance agent was negligent in procuring a comprehensive general liability insurance policy with a gross payroll basis and in not informing them of this fact. According to plaintiffs, losses of over $50,000.00 were sustained by them due to this alleged negligence because they calculated bids for customers using insurance costs based on limited payroll projections instead of gross payroll projections.
Prior to trial, plaintiffs voluntarily dismissed all claims asserted against Underwriters at Lloyd’s London without prejudice but reserved their rights against other named parties. After trial in this matter, the trial judge rendered judgment in favor of the defendant, Alexander and Alexander, Inc. and against plaintiffs, dismissing their suit with prejudice and at their costs. Plaintiffs, appealed.
On appeal, appellants argue that the trial court erred in concluding that appellee was not negligent in failing to inform them of the basis upon which their insurance premium was calculated. Testimony at trial revealed that appellee had procured insurance for appellants for approximately twenty years before the institution of this lawsuit. According to Joseph Huttner, a former employee of the appellee, in all years prior to 1984 in which he procured comprehensive general liability insurance for appellants, a limited payroll basis was used in determining policy premiums.
However, the comprehensive general liability policy procured for appellants for the 1984-85 policy period from Gray and Company was based on gross payroll figures. The Gray policy was in effect immediately prior to the policy at issue procured in 1985 from National Union Fire Insurance Company.
Appellants’ expert, Joseph O’Connor, testified that in 1984 the insurance market for insulation contractors began to tighten due to extensive asbestosis litigation and the resulting reluctance of insurance companies to offer insurance for that type of business. The 1984-85 policy procured from Gray and Company was obtained after appellants’ prior insurer declared bankruptcy. When Gray and Company discontinued insuring insulation contractors, ap-pellee obtained comprehensive general inability insurance for appellants with National Union Fire Insurance Company.
In finding that appellants should have known that the 1985-86 policy was based on gross payroll, the trial judge, in his reasons for judgment, concluded that “Eagle knew, or they should have known, particularly because of the defendants’ letters (Numbers 1 and 2) or because of the conditions in the industry, that charge could be assumed by Eagle to be higher because of the problems in the industry.” In the first letter referred to by the trial judge, Mr. Huttner advised appellants that the 1984-85 policy issued by Gray and Company was based on gross payroll. In that letter, Huttner advised appellants that the insurance market was tightening and that they could expect a rise in premium costs. In the second letter, which was sent to appellants by Huttner two weeks after the National Union policy period began, he advised them that the increased cost of insurance under that policy would translate into a four point increase in the factors to be used in calculating insurance costs in contract bids.
*555 On the basis of the evidence presented, it is clear that appellants knew or should have known that insurance costs were rising and that the 1985-86 policy was based on gross payroll. The gross payroll figure was obtained from a financial statement submitted by appellants and was clearly indicated on the face of the policy. Furthermore, because the policy which insured appellants the preceding year was based on gross payroll, the appellants had no reason to believe that the subsequent policy would be less stringent in light of the tightening insurance market.
The record reveals that appellants paid an advance premium of $210,000.00 for comprehensive general liability insurance at the beginning of the 1985-86 policy period. Because this figure was higher than that of past advance premium figures for this type of insurance, appellants should have inquired as to why the 1985-86 initial premium figure was so much higher and what factors were considered in arriving at that higher figure.
The appellee in this case satisfied its obligation to use reasonable diligence in attempting to procure or renew insurance requested by appellants. See Porter v. Utica Mutual Insurance Company, 357 So.2d 1234 (La.App. 2nd Cir.1978). However, appellants’ claim that appellee was obligated to inform them of the basis on which the 1985-86 policy premium was calculated is not supported by Louisiana jurisprudence.
To the contrary, in Porter v. Utica Mutual Insurance Company, supra, the court held that the agent in that case did not have a duty to affirmatively advise his clients of the express provisions of their insurance policy. The court also held that one of the jury charges given was properly allowed because it was a fair statement of the law concerning the duty of an agent to inform his client with respect to the terms and conditions of a policy. The jury charge paraphrased a section of 44 C.J.S. Insurance § 172 which states:
“in the absence of something said or done to mislead [the insured] or put him off his guard, it is the duty of the insured to inform himself as to the terms and conditions of his policy, and the broker is under no duty to inform him thereof unless requested.”
The record in this case clearly supports the trial judge’s finding that appellee was not negligent in failing to specifically inform appellants as to the basis on which their policy premium was calculated. Because we find no manifest error, the trial court judgment is affirmed.
AFFIRMED.