440 So.2d 874 (1983)
Imogene Hearne McCOLLOUGH, Plaintiff-Appellant,
v.
PENINSULAR FIRE INSURANCE COMPANY et al., Defendants-Appellees.
No. 15690-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 1983.
*875 Smitherman, Lunn & Chastain by W. James Hill, III and John A. Richardson, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendant-appellant.
Hayes, Harkey, Smith & Cascio by Joseph D. Cascio, Jr., Monroe, for defendants-appellees.
Before HALL, FRED W. JONES and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Mrs. Imogene McCollough sued the Peninsular Fire Insurance Company ("Peninsular") for the $25,000 face amount of an insurance policy allegedly covering property damaged by fire. Alternatively, plaintiff asked for $25,000 in damages from Francis Disiere [d/b/a Disiere Insurance & Real Estate Agency] for his failure to keep in force insurance coverage on the damaged property. Disiere's liability insurer, Employers Reinsurance Corporation ("Employers") was subsequently added as a party defendant.
At the conclusion of the presentation of plaintiff's case, Peninsular's motion for dismissal as to it [La.C.C.P. Art. 1810(B)] was sustained and judgment to that effect signed on January 24, 1983. The trial proceeded as to Disiere and Employers. Judgment in favor of these defendants, rejecting plaintiff's demands, was signed on March 23, 1983.
Plaintiff appealed both of the described judgments, contending the trial judge erred in failing to find that:

*876 (1) Because of Disiere's established practice and custom of automatically renewing plaintiff's insurance policies without prior approval from her and prepayment of premiums, that defendant was obligated to keep fire insurance in force on the damaged property.
(2) The Peninsular insurance policy, issued by Disiere and made effective January 19, 1981 [day after the fire] should have been reformed to become effective on January 5, 1981 [operating as renewal of prior policy] since Disiere, as Peninsular's agent, was so obligated.
For reasons hereinafter detailed, we affirm.
Mrs. McCollough, who has been involved in the real estate business for some 30 years, began doing insurance business with Disiere in 1971. During the ensuing years policies written through the Disiere agency covered the McCollough home on Linwood Avenue in rural Caddo Parish, various motor vehicles and two rental properties in Shreveport. One of the latter [involved in this suit] was located on Boulevard Street [most recently occupied by Mrs. McCollough's mother] and the other was situated on West Kirby Street. In July 1980 the McColloughs transferred their motor vehicle insurance coverage to another agency.
From 1971 through 1977 Disiere covered the Boulevard Street house with policies written on The Aetna Casualty and Surety Company. The coverage for the period from January 5, 1978 to January 5, 1979 was placed with Republic Underwriters Insurance Company. From January 5, 1979 to January 5, 1980 a policy issued by Peninsular provided coverage for the property. The latter policy was renewed, with the new policy effective from January 5, 1980 to January 5, 1981.
On November 12, 1980, Disiere's agency mailed to Mrs. McCollough, at her Linwood Avenue address, the following form notice with reference to the last described policy:
"Please note that this policy will expire on date indicated above [January 5, 1981]. It is our earnest desire to continue your coverage and certainly hope that you will contact us in the near future to make arrangements for renewal and payment of the premium.
"If we have not been contacted by you prior to the expiration date of your policy as indicated above, please be advised that all coverage will cease as of 12:01 A.M. that date."
On Sunday morning, January 18, 1981, the Boulevard Street property was damaged by fire. On January 19, 1981 Disiere received in the mail a check from Mrs. McCollough, dated January 15, 1981, for $115. After contacting Peninsular, Disiere issued a policy to Mrs. McCollough on that company, made effective January 19, 1981, covering the Boulevard Street property.
This litigation ensued after Peninsular denied that it had in force on the date of the fire a policy covering the damaged property, asserting that its policy had expired on January 5, 1981 and that the new policy was not in force until January 19, 1981.
At the merit-trial, Mrs. McCollough testified in general that during the years she did insurance business with Disiere her coverage was maintained in force and effect on an automatic basis, whether premiums were paid timely or not. She asserted that from time to time Disiere would increase coverage on the Boulevard Street property without prior consultation with her. According to plaintiff, the usual practice was for Disiere to send her a premium notice and then automatically renew a policy. Thereafter she would pay the premium, sometimes before the due date and sometimes later.
Mrs. McCollough insisted that she did not receive the above described notice mailed by Disiere's office on November 12, 1980 until January 15, 1981; that she immediately telephoned the agency and spoke to someone named "George" concerning the balance she owed; was advised that the balance was $115; and on that date mailed a check for the specified amount to the agency, assuming that this would renew as *877 of January 5, 1981 the policy alluded to in the notice.
Disiere testified that when plaintiff first started doing business with his agency the usual practice was for Aetna to bill plaintiff directly and for her then to pay the premium to his office. In 1976 Aetna changed its procedures and required that the insureds pay the company directly. However, because of his prior custom of extending credit to plaintiff, Disiere continued that practice on those occasions when she requested a policy renewal and did not pay the premium timely.
Disiere further explained that because of problems arising from automatic policy renewals [resulting in cancellations when insureds changed agencies or desired different coverage], the notice to Mrs. McCollough concerning her policy expiring on January 5, 1979 contained the following statement:
"Your policy has been automatically renewed by Republic. Since we have no way of knowing for certain that you wish renewal, we are holding it pending receipt of financial arrangements. If you do not desire renewal, please contact us prior to 1/5/79. If you have not contacted us by 1/5/79 please be advised that all coverage will cease as of 12:01 A.M. that date."
Plaintiff responded to this notice by advising Disiere of her desire to renew the policy.
In 1980 Disiere changed its policy expiration notice to the form letter used in the November 12, 1980 notice to plaintiff concerning the Boulevard Street property. As a matter of fact, Disiere mailed an identical notice to plaintiff with reference to an insurance policy on her West Kirby Street rental property which expired on October 18, 1980. Upon receipt of the notice Mrs. McCollough promptly advised Disiere of her desire to renew the policy, mailing the agency a check dated October 20, 1980 for the specified premium.
Disiere and his office manager denied that there was anyone named "George" employed by the agency to whom plaintiff might have spoken on January 15, 1981. They explained that a telephone inquiry of this nature, relating to a policy renewal, in accord with agency policy would have been referred to one of them and that this was not done. Regardless, plaintiff's position on appeal is that whether she contacted Disiere as asserted is irrelevant since the insurance agent was obligated, because of prior practices with reference to plaintiff's account, to automatically renew the policy in question and bill the insured for the premium.
In written reasons for judgment the trial judge concluded:
"[F]rom all of the evidence it appears that the insurance agent attempted to notify plaintiff, as its policyholder, that her policy would expire on January 5 and `all coverage will cease as of 12:01 A.M. that date' if she did not contact them prior to such time in order to make arrangements for renewal and payment of the premium. An identical notice was sent with regard to other property she owned and had insured through this agent on West Kirby, and the evidence is clear that she did in fact respond to such notice, obtained the amount necessary to renew and had the policy renewed. We find that plaintiff has failed to carry the burden required of her to establish liability under Porter, supra."
To recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured. Redmond v. National Union Fire Insurance Company, 403 So.2d 810 (La. App. 2d Cir.1981); Porter v. Utica Mutual Insurance Company, 357 So.2d 1234 (La. App. 2d Cir.1978).
In Redmond the plaintiff had received a written notice on September 19, 1979 advising *878 him that the insurance on his dwelling would expire on October 26, 1979 and to "come by our office before October 26, 1979 to make full payment." Redmond testified that he telephoned the agency to authorize an increase in his policy limits, but admitted he never paid the stipulated premium. His home was damaged by fire on November 12, 1979. Upon reporting his loss, Redmond was informed that there was no coverage since his policy had expired in accordance with the notice received by him. Redmond then sued the agency's liability insurer, contending that through the years of their doing business the agency had led him to believe that his premium was due only after he received an invoice.
Affirming a judgment adverse to Redmond, we reasoned:
"Regardless of any prior method of payment plaintiff may have had with McKenzie & Mouk, the letter notifying him of a lapse in coverage unless he paid by October 26 served as a termination of any prior credit practices and put him on notice that the policy would not be renewed unless he took affirmative steps by October 26. His failure to comply with the request contained in the letter was tantamount to a waiver of any right he may have had to assume that practices of the past would be maintained."
Plaintiff contends that Redmond is factually distinguishable because in that case the insured actually received notice of the policy expiration prior to the renewal date; was advised to come by the agent's office to make full payment or the policy would not be renewed; and contacted the agent by telephone but thereafter failed to pay the premium.
We understand plaintiff's position on appeal to be that, since she immediately advised the agency of her desire to renew the policy upon receipt of the expiration notice from Disiere on January 15, 1981, because of past practices Disiere was obligated to renew the policy as of the date of expiration of the prior policy [January 5, 1981] and to charge the premium to plaintiff's account. Consequently, the date she might have mailed the check for the premium was irrelevant.
In response to this argument, we first hold (as in Redmond) that any prior practice Disiere might have had in automatically renewing plaintiff's insurance policies was effectively terminated in October 1980 when she received the notice relative to the West Kirby Street property and immediately advised the agency of her desire to renew that insurance, though the check for the premium was not received by the agency until a couple of days later. Therefore, plaintiff had no reason to believe that the policy covering the Boulevard Street property, expiring on January 5, 1981, would be automatically renewed without her contacting the Disiere agency.
Next, viewing the evidence in a light most favorable to plaintiff by assuming that she did not actually receive the expiration notice mailed by Disiere on November 12, 1980 until January 15, 1981, that notice effectively informed her that there had been no automatic renewal of her policy and that it had expired on January 5, 1981. Consequently, if plaintiff desired immediate coverage it was incumbent upon her at that time to make necessary arrangements for another policy. The trial judge found [at least impliedly] that plaintiff did not prove she made this arrangement. On credibility issues such as this we must accord great weight to the trial court's assessment, and do so hereparticularly, in view of the conflicting record evidence.
For these reasons, we conclude that the trial judge correctly rejected plaintiff's demands against Disiere and his insurer.
Determining that Disiere was under no obligation to automatically renew on January 5, 1981 plaintiff's insurance policy covering the Boulevard Street property, the necessity of discussing whether the trial judge erred in sustaining Peninsular's motion to dismiss is pretermitted. Regardless, there is no record evidence that, as an insurance broker, Disiere had the authority to backdate the January 19, 1981 Peninsular policy to January 5, 1981, thus providing *879 coverage for the fire loss. See Neustadter v. Bridges, 406 So.2d 738 (La.App. 4th Cir. 1981).
Accordingly, the judgments appealed are affirmed, at appellant's cost.