505 So.2d 929 (1987)
Norman F. MANY, Jr., Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY CO., Defendant-Appellee.
Norman F. MANY, Jr., Plaintiff-Appellant,
v.
HUMPHRIES-ANDERSON AGENCY, INC., Defendant-Appellee.
Nos. 18614-CA, 18615-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
*930 Burscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiff-appellant.
Hudson, Potts & Bernstein by Robert M. Baldwin, Monroe, for defendant-appellee Hartford Acc. & Indem. Co.
Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., Monroe, for defendant-appellee Humphries-Anderson Agency, Inc.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
The owner of fire-damaged property allegedly insured under a fire insurance policy issued by defendant insurer appealed a judgment denying recovery after the trial judge concluded that the renewal policy in force at the time of the fire restricted both building and inventory coverage to one building which was not damaged by fire, and plaintiff, not the agent, was negligent in failing to have proper insurance coverage. For the following reasons, we affirm.
Norman F. Many, Jr. owned and operated a business known as "The Great Exchange" located at 1700 Cypress Street, West Monroe, Louisiana. The business was housed in two separate structures: a block building containing merchandise for retail sale, and an adjoining building used as a warehouse. On September 12, 1983, a fire which originated on the adjoining property, destroyed the warehouse and its contents.
Paul Anderson, owner of Humphries-Anderson Agency, Inc., had previously solicited Many's insurance business and secured for him a spectrum insurance policy from Hartford Fire Insurance Company. For reasons not relevant to this suit, Hartford Fire cancelled this policy. Many was then issued a fire insurance policy, and Hartford Accident and Indemnity Company ("Hartford"), a subsidiary of Hartford Fire, was substituted as the insurer.
After the fire, Many submitted proof of loss to Hartford, but the insurer refused to pay the claim asserting that the fire insurance policy only covered the large retail building on the premises and not the separate warehouse containing inventory.
Although the ensuing litigation involved numerous parties and corresponding pleadings, we refer only to those parties and pleadings pertinent to this appeal. Many filed separate suits, later consolidated for trial, against Hartford, seeking reformation of the fire insurance policy to provide coverage on the adjoining warehouse and inventory plus penalties and attorney's fees for Hartford's alleged failure to pay the loss, and against Humphries-Anderson, for Anderson's alleged negligence and breach of contract.
Hartford filed a cross-claim against Humphries-Anderson alleging that, if required to reform the fire insurance policy to provide coverage for the damage to Many's business, it was entitled to indemnification from Humphries-Anderson due to several negligent acts and omissions by Anderson. National Union Fire Insurance Company of Pittsburg, Pennsylvania, Humphries-Anderson's errors and omissions insurer, was later added as a defendant.
The trial court denied recovery, stating that the renewal policy in force at the time of the fire restricted both building and inventory coverage to the main building which was not damaged by fire, and Many, not Humphries-Anderson, was negligent in *931 failing to have proper insurance on his premises.
Many appealed this judgment, alleging four specifications of error. Hartford answered the appeal re-urging its cross-claim against Humphries-Anderson. Many's four specifications of error present two issues on appeal, which we shall consider.
A chronology of events is necessary for a complete understanding of the facts in this case:

DATE EVENT
1976 Many opened The Great
 Exchange (one building)
May 3, 1979 Many moved wooden
 building on premises
 (used as a plant shop)
November 11, 1980 Hartford Fire issued
 Many the spectrum policy
1980-1981 Many ceased using wooden
 building as a plant
 shop and began using it
 to store excess inventory
1981 Many added additional
 storage space to front of
 wooden building
August 21, 1981 Spectrum policy cancelled
 and Hartford issued
 Many a fire policy on the
 main building only
August 21, 1982 Many renewed fire policy
1982-1983 Many added additional
 storage space to back of
 wooden building
August 21, 1983 Many renewed fire policy
September 12, 1983 Fire destroyed storage
 building and its contents

REFORMATION
It is not disputed that the fire insurance policy does not provide coverage for the warehouse or its contents. Many contends that the spectrum policy initially issued by Hartford Fire provided coverage on the main building, the warehouse (before the two additions), and all inventory (in either building). Many argues that when Hartford subsequently cancelled this policy and issued the fire insurance policy, it impermissibly restricted the coverage to the one building and its inventory without his knowledge or consent, and therefore the policy should be reformed to provide coverage on the warehouse and its inventory.
Reformation of an insurance policy is permitted when, because of mutual error or mistake, the policy fails to reflect the intent of the parties. Earl Williams Construction Company, Inc. v. Thornton & Brooks, Inc., 501 So.2d 1037 (La.App. 2d Cir.1987). The burden is on the one seeking reformation to prove error by strong, clear and convincing evidence. Clarke v. Progressive American Insurance Company, 469 So.2d 319 (La.App. 2d Cir.1985); Staten v. Security Industrial Insurance Company, 414 So.2d 1328 (La.App. 2d Cir. 1982).
The instant case is factually indistinguishable from Halpern v. Lexington Insurance Company, 558 F.Supp. 1280 (E.D. La.1983), affirmed 715 F.2d 191 (5th Cir. 1983). In Halpern, Lexington issued a policy of insurance on certain property including 1519-21 Prytania Street, New Orleans, Louisiana, with Mrs. Halpern named one of the insureds. This policy was procured by Schlesinger, an insurance broker, under instructions from plaintiff's husband and agent.
At the same time and in the same act of sale that Mrs. Halpern acquired 1519-21 Prytania Street she acquired a separate but adjoining tract of land and building designated by the municipal address 1513 Terpsichore Street. Mr. Halpern did not include 1513 Terpsichore Street on the list of properties for which Schlesinger was to procure insurance coverage. The building at 1513 Terpsichore was subsequently destroyed by fire.
The court stated:
"Looking at the events leading up to and including the entering into of the contract between plaintiff and defendant, it is apparent that no agent or representative of defendant was ever made aware of the existence of the building located at 1513 Terpsichore or of the fact that plaintiff had any intention of insuring said building under its policy for 1519-21 Prytania. Mr. and Mrs. Halpern may have fully intended to cover the building under the policy, but such intention was *932 never even communicated to their insurance broker, Mr. Schlesinger, much less any agent or representative of the defendant. Mr. Halpern did not list 1513 Terpsichore for Schlesinger, nor did he inform him about it, and Schlesinger did not notice the building at the time of his visual inspection of the property."
The court went on to hold:
"Whatever the actual intent of the plaintiff may have been, the manifest intent of the parties, as evidenced by the contract itself and the communications between the plaintiffs and her agents, on the one hand, and defendant and its agents, on the other, was clearly to insure only such property as was located at 1519-21 Prytania. The court may not alter the manifest intent of the parties and reform an insurance contract, absent a finding of mutual mistake by the parties or mistake on one side and fraud on the other. (Citations omitted). There was no mutual error and no suggestion, much less evidence, of fraud on the part of defendant."
Many admitted that he never discussed insuring the warehouse or told Anderson the warehouse was being used to store merchandise. Anderson testified that the only building on which Many ever requested coverage was the main building. Anderson never intended to obtain coverage on the other structure. Dennis Edward Higgins, commercial property and package underwriter for Hartford, testified he was never asked to provide coverage on any structure other than the main building.
The trial court found that neither Many or Anderson ever requested Hartford to insure any other building, and therefore Hartford never "changed its coverage or the terms of any of its insurance policies with regard to fire coverage". The trial court also found that Many did not prove he desired the separate building to be insured, and even if he did, his desire was never communicated or discussed with Anderson.
Under the circumstances of this case, we cannot say the trial court erred in refusing to reform the fire insurance policy. Many failed to prove mutual error or mistake by clear and convincing evidence.

NEGLIGENCE
Since there is no basis for reforming the fire insurance policy, the remaining question is whether Anderson, and thus Hartford, is liable to Many for negligently failing to secure coverage on the warehouse and its contents. Many argues that Anderson visited the premises on several occasions, saw the additional building, and saw, or should have seen, the unloading and storing of merchandise in the building, and therefore should have procured fire insurance coverage on the building and its contents.
A client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Karam v. St. Paul Fire and Marine Insurance Company, 281 So.2d 728 (La.1973); see also La.CC Arts. 3002, 3003. To recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: 1) an undertaking or agreement by the insurance agent; 2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; 3) the actions of the agent warranted an assumption by the client that he was properly insured. Beam v. Intercontinental Life Insurance Company, 447 So.2d 12 (La.App. 2d Cir.1984); McCollough v. Pennisular Fire Insurance Company, 440 So.2d 874 (La.App. 2d Cir.1983); Smith v. Millers Mutual Insurance Company, 419 So.2d 59 (La.App. 2d Cir.1982).
Many admitted that most of his meetings with Anderson occurred inside the main building. Again, the warehouse was never a topic of discussion, and Many never showed Anderson the inside of the structure. Consequently, the agent never undertook to procure the insurance alleged by plaintiff and no action of the agent *933 warranted an assumption by plaintiff that he had the coverage in question.
Assuming, for the sake of argument, that Many desired his entire business insured, he significantly changed the scope of that operation but never conveyed the information to the insurance agent. Consequently, the agent never had an opportunity to discuss with the property owner an adjustment in insurance rates.
There is no merit to this argument by plaintiff. The trial judge correctly ruled there was no proof of negligence on the part of the insurance agent.

DECREE
For the reasons set forth, we affirm the judgment of the district court, at plaintiff's cost.