|,TRAYLOR, Judge Pro Tempore.
Breck Construction Co., LLC (“Breck”) appeals the grant of summary judgment by the Fourth Judicial District for the Parish of Ouachita, Louisiana in favor of Thomas, Farr & Reeves Agency, Inc. For the following reasons, we affirm.
Facts
Breck, a Dallas, Texas construction company, was the general contractor for the construction of a three story apartment building in Fort Worth, Texas (the “Camp Bowie project”). In connection with the project, Breck contacted Thomas, Farr & Reeves Agency, Inc. (“TF & R”), a Monroe, Louisiana insurance agency, for a commercial liability policy. Through TF & R, Northern Insurance Company of New York (the “insurer”) issued a Builders Risk and Installation Policy (“the policy”) to Breck.[1] The policy covered “damage to all property, including but not limited to materials, supplies, machinery, equipment, fixtures, and other property of a similar nature designated to be a permanent part or which has become a permanent part of the fabrication, erection, installation, or alteration or completion of the project while at the project site.” The original effective dates of the policy were December 18, 1998 until December 18,1999.
During the period of time in question, Morris Funderburg (“Funderburg”) was a sales agent with TF & R, and Breck was his client. Mona Chatham (“Chatham”) *1153 was the customer service representative who assisted Funderburg with Breck’s insurance business. On November 16, 121999, Chatham sent a letter to Breck with notification that the policy would expire on December 18, 1999 and further inquired whether Breck would need the policy renewed or extended. Lindy Vineyard (“Vineyard”), a Breck employee, responded that the estimated completion date for the job was February 1, 2000, and based on that information, TF & R obtained an endorsement to the policy (“the endorsement”) up to that date. By a memorandum dated December 30, 1999, Chatham informed Breck of the endorsement, which memo stated the endorsement’s expiration date of February 1, ‘ 2000. Additionally, the expiration date was set forth on the two attachments to Chatham’s memorandum, those attachments being the actual endorsement and TF & R’s invoice.
On February 1, 2000, Breck had not completed work on the Camp Bowie project, to which Vineyard testified TF & R had no knowledge. On February 28, 2000 (obviously well after the endorsement’s expiration date), the endorsement was paid for by Breck, but still no one from Breck informed TF & R that the Camp Bowie project was not completed nor was another extension of the policy requested. Neither Chatham, Funderburg, nor any other representative of TF & R called anyone at Breck to see if the job had been completed or to inform them the expiration date was approaching or had passed, which is the basis for Breck’s claim against TF & R.
On March 28, 2000, a tornado passed through the Fort Worth area causing property damage to numerous ait' conditioning units which Breck had purchased for installation in the Camp Bowie project. Resultantly, a | aBreck representative sent TF & R notice of the property damage, and then later a quote setting forth the extent of the damage to the air conditioning units. Subsequently, the insurer denied the claim, noting the expiration of the policy’s extension period on February 1, 2000 and stating that coverage was not in place at the time of the loss.
The instant lawsuit by Breck against TF & R followed, with Breck claiming that TF & R breached its fiduciary duty to it by failing to give notification of the expiration of the endorsement. Breck alleged that TF & R had engaged in a pattern of informing it when the policy would expire, which warranted an assumption by Breck that it would continue to be so informed by TF & R. A motion for summary judgment was filed by TF & R. After argument by the parties on same, the trial court, ruling from the bench, granted TF & R’s motion, concluding that based on the facts, it was entitled to judgment as a matter of law. This appeal by Breck ensued.
Discussion
On appeal, Breck argues that the trial court erred in granting TF & R’s motion for summary judgment for two reasons. First, Breck maintains that an issue of material fact exists regarding Breck’s reliance on TF & R for notice of the endorsement’s expiration date. Second, Breck states that summary judgment was inappropriate as a matter of law with respect to TF & R’s duty to Breck. We disagree.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. |¿966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). *1154 Although the burden of proof remains with the movant, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but to point out the absence of factual support for one or more elements essential to the claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he can satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); see also Hamdan v. State Farm Mut. Auto. Ins. Co., 36,888 (La.App.2d Cir.03/05/03), 839 So.2d 1017.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir.08/21/96), 679 So.2d 477.
An insurance agent is responsible for his fault or neglect. Smith v. Millers Mut. Ins. Co., 419 So.2d 59, 64 (La.App. 2d Cir.1982), writ denied, 422 So.2d 155 (La.1982). An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to |snotify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730-31 (La.1973); Graves v. State Farm Mut. Auto Ins. Co., 2001-1243 (La.App. 3d Cir.06/26/02), 821 So.2d 769, 771-772, writ denied, 2002-2320 (La.11/15/02), 829 So.2d 435.
Thus, the duty imposed on the insurance agent is to obtain the coverage desired by the customer. In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured. McCollough v. Peninsular Fire Ins. Co., 440 So.2d 874 (La.App. 2d Cir.1983); Smith, supra; Redmond v. National Union Fire Ins. Co. of Pittsburg, 403 So.2d 810 (La.App. 2d Cir.1981); Porter v. Utica Mut. Ins. Co., 357 So.2d 1234, 1238 (La.App. 2d Cir.1978).
In the ease sub judice the evidence establishes no basis for a finding that TF & R breached the duty owed to Breck as set forth in our jurisprudence. The pertinent question herein is whether the actions of TF & R warranted an assumption by Breck that it was insured after February Ifil, 2000, an element that Breck cannot prove, because the undisputed facts indicate that Breck was not reasonable in assuming it was insured past February 1, 2000. Whereas a representative of TF & R had in the past informed Breck of other pending policy expiration dates, in this particular instance, Chatham and Funder-burg admitted that they had not called Breck to remind them of the February 1, 2000 expiration for this specific endorsement. However, this oversight by TF & R is not compelling in light of the facts surrounding the issuance of the endorsement.
*1155 Primarily, Breck received clear notice from TF & R regarding the endorsement’s expiration date of February 1, 2000. In fact, the three separate writings to Breck unambiguously set forth the February 1, 2000 expiration date. Chatham’s December 30, 1999 memo stated the endorsement “[ejxtends coverage on the Camp Bowie project to 2/1/00,” as well as stating an “expiration” of “02/01/00.” The actual endorsement, an attachment to the memorandum, clearly stated: “POLICY PERIOD EXTENDED FROM 12/18/1999 TO 02/01/2000.” The other attachment to the memorandum, TF & R’s invoice, also indicated that coverage was until February 1, 2000. Although we do recognize that the three writings were transmitted to Breck simultaneously, they were nonetheless three separate, distinct documents containing notice of the endorsement’s expiration date in clear and precise terms.
Next, we note that it was Breck who informed TF & R of the estimated completion date for the Camp Bowie job, which date was used for the expiration date of the endorsement. When that date approached, Breck |7would have been in the superior position to know that the Camp Bowie project was unfinished and that another extension of coverage would be needed. Notably, Vineyard testified in deposition that when she reported the estimated completion date to Chatham, she did not believe the Camp Bowie project would be complete by that date; however, her belief was never communicated to anyone at TF & R.
Moreover, perhaps most significantly, Breck paid TF & R the premium for the endorsement on February 28, 2000 by check, almost a full month past the endorsement’s expiration date. The check stub noted TF & R’s invoice number, indicating that the invoice was considered pri- or to paying the bill. In fact, Vineyard admitted that she reviewed all invoices when she signed checks. As stated, the invoice sent to Breck clearly set forth an expiration date of February 1, 2000.
Finally, knowledge of the endorsement’s expiration date was conceded by Breck. John Schween, president of Breck, testified in deposition that the December 30, 1999 memo received by Vineyard was sufficient to show that the policy had been extended until February 1, 2000, a fact also admitted in brief.
This Court has recognized previously that an insurance agent’s duty to his client may be extended “depending on what services the agent holds himself out as performing and on- the specific relationship and agreement between the particular agent and client.” Smith, supra at 65. However, in this case, TF & R fulfilled its duty to Breck because the notice given to Breck of the February 1, 2000 expiration date was more than sufficient to convey lathe necessary information of when Breck’s coverage expired. Failure of TF & R to extend the same courtesy it may have extended in the past to Breck does not create a breach in its duty in light of the conspicuously apparent notice given to Breck regarding the endorsement’s expiration. Additionally, the actions taken by Breck concerning the endorsement show as well that Breck was absolutely not warranted in assuming it had insurance coverage in place on the Camp Bowie project past February 1, 2000.[2] So considering, *1156 the tnal court was not in error in granting TF & R’s motion for summary judgment.
Conclusion
For the foregoing reasons, the judgment in favor of Thomas, Farr & Reeves Agency, Inc. is hereby affirmed, with costs of this appeal assessed to Breck Construction Co., LLC.
AFFIRMED.

. A builders risk policy provides insurance coverage for a construction project during the period of actual construction. Upon completion of a project, the builders risk policy is terminated or allowed to expire, and the owner of the project is responsible for procuring its own permanent insurance on the building.

. This case is distinguishable from prior cases that found a breach of a duty by an agent to its client for failure to notify because in those cases there was no information conveyed to the client that it was not properly insured. See Britten v. Payne, 381 So.2d 855 (La.App. 1st Cir.1980), writ denied, 384 So.2d 800 (La.1980)(reversed for other reasons)(agent breached duty to client in failing to inform that the policy was cancelled due to nonpay *1156 ment of premium); Dauzat v. Gem Underwriters, Inc., 602 So.2d 196 (La.App. 3d Cir.1992), writs denied, 605 So.2d 1368 (La.1992), 605 So.2d 1370 (La.1992)(agent breached its duty to client in failing to advise him of policy's cancellation).