821 So.2d 769 (2002)
Eugene and Sandra McLendon GRAVES,
v.
STATE FARM MUTUAL AUTO INSURANCE COMPANY, Don Higginbotham Insurance Agency, Inc. and Don Higginbotham.
No. 01-1243.
Court of Appeal of Louisiana, Third Circuit.
June 26, 2002.
Rehearing Denied August 7, 2002.
James R. Swanson, New Orleans, Loretta G. Mince, Joseph C. Peiffer, Correro, Fishman, Haygood, Phelps, Walmsley & Casteix, L.L.P., New Orleans, LA, for Plaintiffs/Appellants, Eugene Graves, Sandra McLendon Graves.
Henry G. Terhoeve, Baton Rouge, Stephen Dale Cronin, Guglielmo Marks Schutte Terhoeve & Love, Baton Rouge, LA, for Defendants/Appellees, State Farm Mutual Automobile Insurance Company, State Farm Fire & Casualty Company, Don Higginbotham Insurance Agency, Inc., Don Higginbotham.
*770 Court composed of Chief Judge NED E. DOUCET, JR., HENRY L. YELVERTON, and JIMMIE C. PETERS, Judges.
PETERS, J.
The plaintiffs, Eugene and Sandra McLendon Graves, appeal the grant of a summary judgment in favor of the defendants, State Farm Mutual Automobile Insurance Company (State Farm Mutual), State Farm Fire and Casualty Company (State Farm Fire), Don Higginbotham, and Don Higginbotham Insurance Agency, Inc. (the Agency), dismissing their claims against the defendants. For the following reasons, we affirm the trial court judgment in all respects.
This litigation actually arises from a separate suit filed as a result of an April 23, 1997 automobile accident. On that day, a vehicle owned by the Graves and driven by Mrs. Graves struck the rear of a vehicle driven by Harmon Bryan Roy. Mr. Roy and his wife brought suit against the Graves and their automobile liability insurance carrier, State Farm Mutual, to recover the damages they sustained in the accident. The Graves had acquired the automobile liability insurance policy from State Farm Mutual through the Agency which Mr. Higginbotham owns. The policy provided liability limits of $100,000.00 per person and $300,000.00 per accident. Ultimately the Graves and State Farm Mutual settled with the Roys for $260,622.08 with the Graves contributing $137,200.00 of their personal funds to the settlement. State Farm Fire was never a party to this litigation. Its connection to the Graves is that it provided them with homeowner's insurance liability coverage in a policy issued through the Agency.
The Graves brought the action now before us to recover their contribution to the settlement from the defendants, asserting that the defendants had a duty, both in contract and in tort, to advise them to carry higher liability limits or purchase an umbrella policy. The Graves assert that the breach of that duty by the defendants damaged them to the extent of their $137,200.00 contribution to the settlement of the Roy litigation. In granting the defendants' motion for summary judgment and dismissing the plaintiffs' demands, the trial court rejected this argument. The Graves have appealed asserting three assignments of error.[1]
1) The trial court erred in holding that defendants had no duty to advise their clients of the cost, availability and desirability of certain insurance coverages and limits of liability.
2) The trial court erred by holding that an insurance agent did not breach his duty when he failed to properly advise his clients.
3) The trial court erred by holding that the Graves' homeowner policy excluded their coverage when State Farm could not prove that it properly delivered the policy.
This court reviews summary judgments de novo under the same criteria governing the trial court's consideration of whether or not it should grant summary judgment in any given case. Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. In Babin v. Winn-Dixie Louisiana, Inc., 00-0078, pp. 3-4 (La.6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court *771 addressed the conditions under which summary judgment should be granted.
A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, which closely parallels the language of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
In support of their motion for summary judgment, the defendants filed a number of affidavits as well as copies of discovery deposition testimony, correspondence, and the insurance policies at issue. After considering the record and the argument of counsel, the trial court concluded that to accept the Graves' argument would require every insurance agent to require their customers to provide financial statements, to examine those statements, to determine the customer's net worth, and to then determine a course of action. The trial court found that no such duty existed in contract or tort.
As stated in Smith v. Millers Mutual Insurance Co., 419 So.2d 59, 64 (La. App. 2 Cir.), writ denied, 422 So.2d 155 (La.1982), "an insurance agent is responsible not only for his unfaithfulness but also for his fault or neglect." The Louisiana Supreme Court, in Karam v. St. Paul *772 Fire & Marine Insurance Co., 281 So.2d 728, 730-31 (1973), stated:
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
(Emphasis added.)
Thus, the duty imposed on the insurance agent is to obtain the coverage desired by the customer.
In Porter v. Utica Mutual Insurance Co., 357 So.2d 1234, 1238 (La.App. 2 Cir. 1978), the court stated the burden of proof required of one seeking relief from his agent as follows:
In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured.
See also, Smith, 419 So.2d 59; Redmond v. Nat'l Union Fire Ins. Co., 403 So.2d 810 (La.App. 2 Cir.1981).
The evidence presented in support of and in opposition to the motion for summary judgment in this matter establishes no basis for a finding that the defendants breached the duty owed to the Graves as set forth in our jurisprudence. It basically establishes that the Graves were long-time customers of the Agency, that they had little contact with anyone within the Agency, and that they never sought any insurance advice.
Responses by the Graves to discovery requests established that they had been doing business with the Agency for approximately ten years prior to the accident giving rise to the Roy litigation. In his deposition introduced in support of the motion for summary judgment, Mr. Graves testified that, although he had a limited education,[2] he had worked for Petroleum Helicopters, Inc. for approximately twenty-six years and that he had been promoted through the company to the position of vice-president for sales before he left the company in May of 1993. According to Mr. Graves, after leaving Petroleum Helicopters, he began working for Offshore Logistics, Inc. in the same capacity, but for significantly more money. This allowed him to move into an affluent section of the Lafayette, Louisiana community and to become one of the "movers and shakers" of the community. Although he never directly discussed his new-found affluence with Mr. Higginbotham, he assumed that Mr. Higginbotham was familiar with his financial situation because both men were a part of the Lafayette "elite circle" and everyone was aware of his employment move.
Mr. Graves testified that he had no recollection of how he came to have coverage as evidenced by the policy. In fact, he *773 thought he had $300,000.00 in liability coverage instead of $100,000.00. Concerning his recollection of insurance coverage changes, he stated the following:
I don't recall ever changing it, and I don't recall Don or anyone at his office ever suggesting that we look at it, change it, increase, decrease, or otherwise. The only time that I can recall, I guess even posing the question, was with one of the young ladies in Don's office maybe at a renewal time or when we had bought a new vehicle, and I think I asked the question, you know, do I have the right coverage, and the response was, Mr. Gene, you have more insurance than 90 percent of our customers or something like that. So I felt pretty comfortable with it.
According to Mr. Graves, this conversation occurred in 1996. However, he did not recall the specifics of how the subject arose.
Mr. Graves acknowledged receiving renewal notices and paying them when due. When he obtained homeowner's insurance, he did not discuss the type of insurance, but simply provided the Agency with the necessary information and the policy was issued. Although he normally saw Mr. Higginbotham in a social setting, he could not ever recall discussing insurance with him at any time. All contacts he had were with the office personnel at the Agency.
According to Mrs. Graves, her husband always attended to the family insurance requirements, and she did not even know how much insurance they had on their vehicles. Although she began using the Agency before her marriage to her husband, Mrs. Graves did not recall any conversations with Agency personnel concerning her insurance requirements and only knew Mr. Higginbotham on a social basis. The Graves both testified that they had never heard of "umbrella" coverage before the April 23, 1997 accident.
According to Mr. Higginbotham, the Agency provided its customers with advertisement material because it has an interest in maintaining contact with its customers for the purpose of selling more insurance. He asserted that the Graves would have received an annual letter recommending that they come in for a "family insurance check up," an annual renewal notice of the various policies issued to them by the Agency, and notices when premiums became due. According to Mr. Higginbotham, the Graves "typically ... had two automobiles insured with [State Farm Auto] that had been purchased through [the Agency]" and premium notices were sent every six months for each separate policy. These notices included notification of the actual coverage limits under the policy. Mr. Higginbotham asserted that the Graves never responded to the "family insurance check up" letter and that he never received any communication from the Graves suggesting that they had not received any particular insurance contract. Both Mr. and Mrs. Graves testified that they did not recall receiving the various notices described by Mr. Higginbotham, although Mr. Graves acknowledged receipt of the premium notices.
Nothing in the record suggests that the Graves ever sought guidance in their insurance affairs from Mr. Higginbotham or the Agency. In Smith, 419 So.2d at 65, the court recognized "that an insurance agent's duty to his client can be greater than merely the procuring of requested insurance, depending on what services the agent holds himself out as performing and on the specific relationship and agreements between the particular agent and client." However, in this particular case there is no evidence that any of the defendant's *774 held themselves out as advisor to the Graves or that there existed a specific relationship or agreement to render insurance advise. Additionally, there is no evidence that the Agency failed to procure the coverage desired by the Graves. Thus, the Graves failed to establish the first element of proof as set forth in Porter, 357 So.2d 1234. We agree with the trial court and decline to hold that Mr. Higginbotham or the Agency, under the facts of this case, had an affirmative duty to inquire into their financial condition and make recommendations. Thus, we find no merit in the Graves' first assignment of error. This finding renders consideration of the other assignments of error moot.

DISPOSITION
For the foregoing reasons, we affirm the trial court's grant of the summary judgment dismissing the plaintiffs' suit. We assess all costs of this appeal to Eugene and Sandra McLendon Graves.
AFFIRMED.
NOTES
[1] The plaintiffs actually assert a fourth assignment of error which related to a trial court judgment, rendered on the same day as the grant of the motion for summary judgment, denying their request for a jury trial. However, because we find the trial court did not err in granting the motion for summary judgment and dismissing the litigation, we need not consider this assignment of error.
[2] Mr. Graves testified that he completed the 11th grade in high school, but obtained his GED.