NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


07-790


NICOLE AND MATTHEW YOUNG

VERSUS

C. BENNY THIBODEAUX, O.D., EYEMASTERS, INC.,
AND ABC INSURANCE COMPANY


**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-2915-L
HONORABLE MARILYN C. CASTLE, PRESIDING
**********


SYLVIA R. COOKS
JUDGE


**********


Court composed of Sylvia R. Cooks, Marc T. Amy and Elizabeth A. Pickett,
Judges.


AFFIRMED.


H. Alston Johnson, III
F. Scott Kaiser
Erin Wilder-Doomes
Suite 701, City Plaza
445 North Boulevard
Baton Rouge, LA 70802
(225) 346-0285
COUNSEL FOR APPELLEES:
        Brown & Brown, Inc., Optometric Protector Plan
        and Optical Services Protector Plan.

**Michael W. Adley**
**Judice & Adley, APLC**
**P.O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**COUNSEL FOR APPELLANT:**
    **C. Benny Thibodeaux, O.D.**

**COOKS, Judge.**

Plaintiffs, Nicole and Matthew Young, filed suit against Dr. C. Benny Thibodeaux and others seeking damages for alleged malpractice. The Youngs claimed on February 23, 2002, Dr. Thibodeaux failed to diagnose a melanoma of Nicole's left eye, allegedly resulting in loss of the eye.

Upon receipt of the petition, Dr. Thibodeaux forwarded the suit to his insurer, NCMIC Insurance Company. The policy with NCMIC was an occurrence policy. NCMIC advised Dr. Thibodeaux that its policy did not provide coverage for the claim asserted because the inception date of the policy was May 5, 2003, which was *after* the treatment at issue. Dr. Thibodeaux also provided the petition for damages to his prior insurer, Certain Underwriters at Lloyds. Dr. Thibodeaux was informed that no coverage was provided by the Lloyds policy because the claim was not made *during* the life of that policy. The Lloyds policy was a claims made policy.

In effect, Dr. Thibodeaux became aware he had a gap in his insurance coverage. Dr. Thibodeaux contended his insurance brokers/agents had converted his insurance from claims made coverage to occurrence coverage, and failed to advise him to procure tail coverage to ensure he was covered for any claims arising from treatment rendered prior to the effective date of the NCMIC occurrence policy. As a result of this failure, Dr. Thibodeaux filed a third party demand against the insurance brokers/agents, Brown & Brown, Inc., Optometric Protector Plan and Optical Services Protector Plan (hereafter Brown & Brown). A motion for summary judgment seeking dismissal of the third party demand was filed by Brown & Brown, who argued they had no duty to advise Dr. Thibodeaux regarding insurance coverage.

During a deposition, Dr. Thibodeaux acknowledged for the past 25 or 30 years he had obtained all his insurance coverage through the Fontenot Agency. After

speaking to other optometrists, he believed he could get his professional liability insurance coverage for significantly less. Dr. Thibodeaux testified he made a telephone call to obtain cheaper coverage. He stated he could not remember the details of the conversation, nor could he recall the name of the company he called. Presumably it was Brown & Brown, as that is who he obtained coverage from. To obtain the policy, Dr. Thibodeaux completed an "Application for Occurrence/Professional and General Liability Coverage." He testified he completed the application himself and signed it. The application reveals he requested professional liability coverage limits of $1,000,000/$3,000,000, and indicated he did not wish to include general liability coverage with $1,000,000/$3,000,000 limits. A policy was issued reflecting the above terms. When Dr. Thibodeaux received the policy he called the Fontenot Agency and canceled his prior policy, which was still in effect, by completing a Cancellation Request/Policy Release.

After a hearing on the motion for summary judgment, the trial court granted the motion and dismissed Dr. Thibodeaux's third party claims. Dr. Thibodeaux perfected this appeal and asserts as his lone assignment of error that the trial court erred in granting summary judgment.

## ANALYSIS

Appellate courts review summary judgments de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-0078, pp. 3-4 (La. 6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which summary judgment should be granted:

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ.P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

This amendment, which closely parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, *writ denied*, 97-0281 (La.3/14/97), 690 So.2d 41.

Dr. Thibodeaux argues the trial court erred because there were genuine issues of material fact that should have precluded the grant of summary judgment. Specifically, he asserts there is a question of fact as to whether his assumption was reasonable that Brown & Brown would provide the insurance he needed or advise him if he needed additional coverage. Dr. Thibodeaux also argues there was a

question of fact as to whether Brown & Brown represented to him that they could provide his insurance needs, but failed to do so. However, he was unable to testify as to what he communicated to Brown & Brown because he could not recall details of his conversation with the company's agents. In *Graves v. State Farm Mutual Automobile Insurance Co.*, 01-1243 (La.App. 3 Cir. 6/26/02), 821 So.2d 769, 773, quoting *Smith v. Millers Mut. Ins. Co.*, 419 So.2d 59, 65 (La.App. 2 Cir. 1982), we stated "an insurance agent's duty to his client can be greater than merely the procuring of requested insurance, *depending on what services the agent holds himself out as performing and on the specific relationship and agreements between the particular agent and client*." (Emphasis added). In *Graves*, we affirmed summary judgment in favor of insurance agents who had been sued by their insureds because the agents breached a duty to "advise them to carry higher liability limits or purchase an umbrella policy." *Id*. at 770. The insureds in *Graves* had been in business with the agents in question for approximately ten years before the incident giving rise to the litigation occurred. The plaintiff could not recall how he came to have the coverage evidenced in the policy and believed he had higher limits than he did.

The *Graves* court found there was no evidence in the record to suggest the insureds ever sought guidance in their insurance affairs from the agents. Likewise, there was no evidence to suggest any of the agents held themselves out as advisors, or that there was a specific relationship or agreement to render advice. The court also found no evidence that the agents failed to obtain the coverage requested. Under the facts of the case, the *Graves* court concluded the agents had no affirmative duty to make recommendations regarding coverage to the insureds. The court noted the duty imposed on an agent is "to obtain the coverage *desired* by the customer." *Id*. at 772. Dr. Thibodeaux was unable to provide any testimony that Brown & Brown held itself

out as advisors to him, or did anything other than obtain the coverage *specifically requested* by Dr. Thibodeaux. At the hearing, the trial court explained its reasons for granting summary judgment:

> You know, the purpose of summary judgment is for the plaintiff to come forward in this case, since the plaintiff is opposing it, and saying, I have sufficient information to – that a trier of fact could use to determine that I prevail.
>
> I don't see that in this deposition. I mean, he's saying, I don't even – You know, I think maybe, subjectively, he knew what he wanted. But, when they questioned him, after the colloquy that you're talking about on page 46 and on page 47 and said, what did you say, he says, I can't recall it. So how is he going to carry his burden of proof at trial?
>
> . . . .
>
> The cases say, if you call the insurance agent and you give them certain information, then they may have a duty. But your client has said that he doesn't even know what he told them.
>
> Basically, all he said is, I was looking for cheaper coverage. That seems to be, throughout his deposition, his thing was that he wanted some cheaper coverage.
>
> But, as far as him, in his deposition, making any statements about what he was looking for or what he was trying to replace, it – it doesn't really say that.

Unlike the Fontenot Agency, who he decided not to renew coverage with, Brown & Brown had no prior dealings with Dr. Thibodeaux except for the simple transaction which forms the substance of this suit. Thus, there is nothing from the parties' prior dealings that might remotely suggest that Brown & Brown should have realized Dr. Thibodeaux expected it to do more than he specifically requested in providing his professional malpractice coverage. Therefore, finding no error in the trial court's grant of summary judgment and dismissal of Dr. Thibodeaux's third party suit, we affirm. All costs of this appeal are assessed to plaintiff-appellant.

**AFFIRMED.**

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**