**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**09-1055**

**MCMULLEN BUILDERS, L.L.C.**

**VERSUS**

**KINNEY INSURANCE AGENCY, L.L.C., ET AL.**

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-6145
HONORABLE WILFORD CARTER, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy H. Ezell, Judges.

**AFFIRMED.**

**John S. Bradford**
**Paul P. Marks**
**Stockwell, Sievert, Viccellio,**
**Clements & Shaddock, L.L.P.**
**Post Office Box 2900**
**Lake Charles, LA 70602**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **McMullen Builders, L.L.C.**

**David J. Calogero**
**Davidson, Meaux, Sonnier &**
**McElligott, L.L.P.**
**810 South Buchanan Street**
**Post Office Box 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
> **Kinney Insurance Agency, L.L.C.**
> **UTICA Mutual Insurance Company**

PETERS, J.

The plaintiff, McMullen Builders, L.L.C. (McMullen Builders) appeals the jury verdict dismissing its claim against Kinney Insurance Agency, L.L.C. (Kinney Agency), and UTICA Mutual Insurance Company, Kinney Agency's errors and omissions insurer. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The litigation arises from a June 21, 2006 fire that caused severe damage to a structure owned by McMullen Builders. McMullen Builders asserted in its suit that representatives of Kinney Agency negligently failed to obtain fire insurance coverage on the structure, thus causing McMullen Builders significant damages.

The record establishes that two brothers, Bill and John McMullen, own McMullen Builders, a limited liability company whose business is building and remodeling homes, and that the company obtained ownership of the structure at issue in this litigation mid-morning on June 20, 2006. McMullen Builders planned to remodel this house, which was located on Camellia Lane in Sulphur, Louisiana, and on the afternoon of June 20, Melanie McMullen, John's wife, was sent to run a number of errands on behalf of McMullen Builders, one of which was to attempt to obtain insurance coverage for the house.

Melanie testified that she often acted as McMullen Builders' "girl Friday," running errands as needed, and that on the afternoon of June 20, 2006, at approximately 1:30 p.m., she picked up papers associated with the title transfer from the attorney's office and took them to Lisa McMullen at the office. Lisa, who is Bill's wife, then gave Melanie a check to pay off a lien on the house. Bill, who was at the office at the time, requested that she stop by Kinney Agency in Sulphur and

secure insurance coverage for the newly-purchased house. Lisa then gave Melanie a blank check made out to Kinney Agency to cover the cost of coverage.

At that time, Kinney Agency generally handled McMullen Builders' insurance needs, having procured workers' compensation and general liability coverage as well as insurance on a mobile home the limited liability company owned. Lee Kinney, the owner of Kinney Insurance Agency, was an independent insurance agent who wrote insurance with a number of different companies.

At 2:15 p.m., Melanie paid to cancel the lien at the City of Sulphur office. She testified that after completing her business at the Sulphur office, she went directly to the Kinney Agency, arriving some fifteen minutes later. Melanie said that she arrived just as Jamie Meche, the agency secretary, was leaving to care for a sick child. She then spoke with Lee concerning the insurance issue and took notes during the conversation.[1] According to Melanie, Lee told her that the structure would be covered, for her to come back in the morning and he would have everything he needed, but concluded with "Just go ahead, I've got you covered. . . . Don't worry, I've got you covered right now. Let me make a phone call, and then we'll wrap things up in the morning." According to Melanie, she left the Kinney Agency at approximately 3:00 p.m. She then telephoned Bill to inform him that she had secured insurance as per his instruction, and that the only issue was that of liability.

Bill testified that he did not remember the telephone conversation with Melanie, but that had she telephoned him to inform him that she was not able to obtain insurance, he would have remembered that. John testified that he telephoned Lee at the agency and that Lee told him there was no reason for him to come in

---

[1] Her notes, which were introduced into evidence, reflected a notation that the insurance would cost $861.05 for six months, with a $1,000.00 deductible.

because Melanie had taken care of the insurance.[2] According to John, Lee informed him that he had coverage, and that the only issue was liability coverage.

Lee's testimony contradicted that of both Melanie and John. According to Lee, Melanie did come to his office to purchase insurance, but she arrived at 4:00 p.m., not at 2:30 p.m. as she had testified. He was in the process of giving her a quote when he was informed that someone else was living in the house.[3] Not being sure he could write a policy on a house that would be renovated while a tenant occupied it, he needed to contact the company that would provide the coverage. He testified that the company with whom he would have to place the insurance was based in Georgia, in the eastern time zone, where it was already 5:00 p.m., and that it had already closed for the day. Lee disagreed with the statement that Melanie credited to him in her testimony. Specifically, he testified that he never told Melanie that the structure at issue was covered, saying

> I know I did not insinuate coverage in any stretch, form, fashion. I looked at her right square in the eyes, and I said, I cannot help you today. There is no coverage. I can't help you at all. Come back in the morning.

According to Lee, he fully intended to write the policy the following day, but there was nothing he could do on the afternoon of June 20.

With regard to John's telephone conversation with him, Lee testified that it never happened. According to Lee, John did telephone the agency, but Lee was busy at the time and Julie took a message. He testified that he did not return John's telephone call because Melanie came by his office after John had called. Lee's office

---

[2]John's cellular telephone records indicate he telephoned Kinney Agency at 3:31 p.m. on June 20, 2006.

[3]Although McMullen Builders acquired ownership of the property, the previous owner continued to occupy the home.

telephone message book contained a message slip that has neither a time nor a date, but indicates that John did call. However, the message slip is sandwiched between one dated at 3:12 p.m. and another dated at 4:15 p.m. on June 20. Jamie testified that she wrote the message slip.

Jamie did not support Melanie's timeline either. She testified that while she did not remember specifically when she left work on June 20, but the last telephone message she took was noted at 4:24 p.m. On cross-examination, Melanie admitted that the timeline she testified to on direct was not entirely accurate. She acknowledged that she did not go directly to the agency office after cancelling the lien. Instead, while at the City's office, she made arrangements for the water to be turned on at the newly-acquired house.

Sometime in the early morning hours of June 21, 2006, the house burned. Eventually it was torn down. When Kinney Agency denied McMullen Builders' claim for insurance coverage on the house, this suit resulted. Following the trial, the jury rejected McMullen Builders' claim. Thereafter, the trial court executed a judgment incorporating the jury's verdict and taxed McMullen Builders with all costs, including $2,600.00 in expert witness fees.

McMullen Builders appeals, with seven assignments of errors:

1.  Whether, as a matter of law, the jury clearly erred in not recognizing that McMullen Builders proved that Kinney owed a duty to McMullen, that Kinney breached that duty and that the breach resulted in injury to McMullen.

2.  Whether, as a matter of law, the jury clearly erred in not recognizing that McMullen proved that Kinney represented that the house was covered, that McMullen justifiably relied on that representation, and that McMullen changed its position based on such justifiable reliance.

4

3.  Whether the trial court, as a matter of law, erred in not allowing testimony showing evidence of a habit of Kinney Insurance.

4.  Whether the trial court, as a matter of law, erred in not allowing impeachment evidence.

5.  Whether the trial court, as a matter of law, erred in not allowing the relevant evidence of the replacement cost value of the subject property.

6.  Whether the trial court, as a matter of law, erred in excluding evidence of what McMullen Builders paid to demolish the house after it was destroyed by fire.

7.  Whether the trial court erred in the amount it awarded to the defendants' expert witness.

**OPINION**

For the purposes of continuity we will address the assignments of error out of order.

***Assignments of Error Numbers Three and Four***

We first address the two evidentiary issues: whether the trial court erred in not allowing testimony intended to show evidence of a habit of Kinney Agency and whether the trial court erred in not allowing evidence designed to impeach Lee's deposition testimony. In reviewing these issues, we recognize that "[a] trial court is given vast discretion in its ruling on the admissibility of evidence." *Gold, Weems, Bruser, Sues & Rundell v. Granger*, 06-859, p. 9 (La.App. 3 Cir. 12/29/06), 947 So.2d 835, 843, *writ denied*, 07-421 (La. 4/27/07), 955 So.2d 687.

Before the trial began, the trial court granted the defendants' motion *in limine* to exclude the testimony by Bonnie Spears, the office manager for New Horizons Counseling Center. She was to testify that she had contacted Kinney Agency on behalf of New Horizons Counseling Center to obtain insurance coverage on a building owned by the Center, that Lee had told her that the building was covered, but

5

that in fact Lee did not obtain the requested insurance coverage. McMullen Builders argues on appeal that this testimony was admissible under La.Code Evid. art. 406, which allows "[e]vidence of the habit of a person or of the routine practice of an organization." However, although La.Code Evid. art. 406 allows testimony relating "specific instances of conduct," these must be "sufficient in number to warrant a finding that the habit existed or that the practice was routine." Here, where the testimony at issue related only one instance of conduct, we find that the trial court did not abuse its vast discretion in finding that the proffered testimony was not admissible.

McMullen Builders also argues that the trial court erred in granting the defendants' motion *in limine* to exclude evidence of other claims made against Kinney Agency. In his June 12, 2007 deposition, Lee acknowledged being sued by New Horizens; but when asked "[h]ave you ever been sued by anyone else," Lee answered "[n]o, sir." McMullen Builders sought to introduce evidence of two other lawsuits against Kinney Agency to establish that Lee's deposition testimony was untruthful.[4] The trial court rejecting both offerings. Specifically, the trial court found that because the *Cunningham* suit had been filed only against the agency and not against Lee personally, it could not be used to impeach Lee's testimony that he had not been sued by anyone else. Concerning the *English* case, the defendants introduced evidence to establish that the petition in that matter had been served through Lee's office, and not to him personally, on Friday, June 8, 2007, and he did not see the petition until the next week. Because his deposition was taken on

---

[4]The suits are identified in the record as *Cunningham v. Kinney Insurance Agency, L.L.C.*, filed on May 2, 2007; and *English v. Kinney Insurance Agency, L.L.C. & Edward Lee Kinney, Jr.*, filed on June 4, 2007.

Tuesday, June 12, 2008, the trial court prohibited McMullen Builders from using the suit's existence to impeach Lee.

In its reply brief on appeal, McMullen Builders asserts that Lee accepted personal service in *English* the day before his deposition. However, our review of the proffer by McMullen Builders on this issue reveals that the record contains no return of service or other evidence to establish when Lee was served with the lawsuit. We find that the trial court did not abuse its vast discretion in refusing to admit evidence of the two suits.

We find no merit in either of these two assignments of error.

***Assignments of Error Numbers One and Two***

In its first assignment of error, McMullen Builders argues that the jury clearly erred in rejecting its argument that Kinney Agency breached the duty to procure the insurance requested and that McMullen Builders suffered injury because of that breach. In its second assignment of error, it argues that the jury clearly erred in not recognizing that McMullen Builders proved that Lee represented to Melanie (and therefore to the limited liability company itself) that the house was covered, that McMullen Builders justifiably relied on that representation, and that McMullen Builders changed its position based on such justifiable reliance. Because both assignments of error center around the same issue—whether the jury erred in not finding that Lee told Melanie and/or John that there was insurance coverage on the house—we address these two assignments of error together.

The supreme court, in *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730-31 (La. 1973), articulated the relevant duty of an insurance agent as follows:

> An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in

7

attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.

Additionally, in *Porter v. Utica Mut. Ins. Co.*, 357 So.2d 1234, 1238 (La.App. 2 Cir. 1978), the second circuit stated:

> In order to recover for loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) the actions of the agent warranted an assumption by the client that he was properly insured.

*See also Graves v. State Farm Mut. Auto Ins. Co.*, 01-1243, pp. 3-4 (La. App. 3 Cir. 6/26/02), 821 So.2d 769, 772, *writ denied*, 02-2320 (La. 11/15/02), 829 So.2d 435.

Whether Lee breached his duty is a factual determination subject to the manifest error/clearly wrong standard of review. *Stobart v. State, Through Dep't. of Transp. & Dev.*, 617 So.2d 880 (La.1993). In order to reverse a factfinder's determination of fact, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. *Stobart*, 617 So.2d 880. Where there is conflict in the testimony presented at trial, the factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A factfinder's credibility determinations are subject to the strictest deference, and the manifest error or clearly wrong standard demands great deference for the factfinder's findings. *Theriot v.*

*Lasseigne*, 93-2661 (La. 7/5/94), 640 So.2d 1305. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. Thus, if the factfinder's decision is reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though the appellate court would have weighed the evidence differently. *Rosell*, 549 So.2d 840.

The evidence at trial concerning what time Melanie arrived at the agency office, what Lee told Melanie at the conclusion of their meeting that day, whether John spoke to Lee at 3:31p.m., and, if so, what Lee told John, was certainly contradictory. The jury could have determined that Lee and Julie were more credible than John and Melanie. Such a determination would lead the jury to conclude that when John called the agency at 3:31 p.m., Julie answered the phone and took a message for Lee; that Melanie arrived at the office at around 4:00 p.m.; and that Lee told her he could not write a policy on the house that day.

While we might well have made different credibility determinations and reached a different result, we cannot say that the jury was clearly wrong in accepting the testimony of Lee and Julie to conclude that Lee used reasonable diligence in attempting to place the insurance McMullen Builders requested, and that Lee told Melanie that McMullen Builders did not have insurance coverage on the house.

We find no merit in these two assignments of error.

### Assignments of Error Numbers Five and Six

Because we affirm the jury's verdict, we need not address these assignments of error.

***Assignment of Error Number Seven***

Finally, McMullen Builders argues that the trial court erred in awarding the defendants $2,706.00 in expert witness fees. The trial court "may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La.Code Civ.P. art. 1920. Louisiana Revised Statutes 13:3666(A) provides that a witness called to testify as to an opinion founded on a professional examination and to state the results of the examination "shall receive additional compensation, to be fixed by the court, with reference to the time employed and the degree of learning or skill required." Further, La.R.S. 13:3666(B) provides that "[t]he court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment . . . ." In determining expert witness fees, "each case must turn on its own peculiar facts and circumstances." *Hazelwood Farm, Inc. v. Liberty Oil And Gas Corp.*, 02-266, p. 19 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, 394, *writs denied*, 03-1585, 03-1624 (La. 10/31/03), 857 So.2d 476. An appellate court can modify a trial court's assessment of costs only upon a showing of abuse of discretion. *Id*.

Mark Tammariello, an expert in the field of insurance agency practice, testified for the defendants. He had submitted two statements for services rendered in the litigation. The first statement, for $1,750.00, represented charges for services rendered after being retained through the taking of his deposition. The second statement, for $2,707.35, represented charges for services rendered after the deposition through trial. The trial court did not tax the expert's total charges as costs to McMullen Builders. Instead, the trial court taxed only $2,600.00, or slightly over fifty percent, of the expert's charges as costs to be assessed to McMullen Builders.

10

The dispute in this assignment of error relates to allocation of the charges in the first statement because the parties had entered into an agreement concerning the costs associated with their expert witnesses and their deposition testimony. Specifically, "each party agreed to pay their own expert witness fees for depositions." The first statement was broken down to one-half hour discussing the case with the defendants' attorney, seven and one-half hours reviewing depositions provided to him, and two hours testifying at the deposition. McMullen Builders argues on appeal, as it did below, that the entire $1,750.00 statement should be considered a part of the agreement with regard to expert witness deposition testimony, and that the appropriate award should be somewhere around one half of the second statement. On the other hand, the defendants argue that the agreement related only to the two hours spent in the deposition, and that the preparation could be equally considered as trial preparation.

In reaching the expert witness award, the trial court recognized the agreement as covering only the time spent in deposition testimony and reduced the award of expert witness fees accordingly. The trial court obviously agreed with the defendants' interpretation even though the seven and one-half hours of preparation time occurred within a few days prior to the August 30, 2008 deposition.

We find no abuse of discretion in the trial court's award of expert witness fees.

## DISPOSITION

For the foregoing reasons, we affirm the judgment rendered in favor of Kinney Insurance Agency, L.L.C., and UTICA Mutual Insurance Company dismissing the claims of the plaintiff, McMullen Builders, L.L.C. We also affirm the trial court's

judgment awarding the defendants $2,600.00 in expert witness fees.  We assess all costs of this appeal to McMullen Builders, L.L.C.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.